ALLEN, P.,
after stating the case, proceeded:
It is objected by the appellant’s counsel that the court erred in not decreeing a deed from the vendor to the vendee. The vendor had not the legal title. This *was known to the vendee, and the vendor merely sold his equitable interest under the title bond, and authorized and empowered the vendee to acquire the legal title from Spencer’s heirs. The obligation devolved on the appellant to institute proper proceedings to get in the legal title if he had deemed it of any importance to him. He was no doubt content to rest on the title bond executed more than fifty years prior to the final decree in this cause, and the possession held under it by himself and those under whom he claimed. His default in not getting in the legal'title furnishes him with no protection against the payment of the purchase money.
As to the decree referred to in the condition of the bond, it appears from the decrees in this case and the case of Gillispie and wife against the appellant and others, that the said decree has been rendered inoperative by the decree of the same court of the 25th of March 1846, in the case of Spencer’s administrators and heirs against John James, &c.
It is further insisted, that the appellant purchased three-sevenths of the land, and gets but one-seventh. That Seth Rathey and wife have not conveyed; and that Gillispie and wife have, by the decree rendered in their favor, annulled their contract of sale to the appellee, on the ground of infancy. The appellee agreed to sell all his right, title and interest in and to three undivided seventh parts of said land, one being his own undivided equitable interest as an heir. The other two undivided interests he claimed by purchase as aforesaid’; and the contracts of purchase were delivered over to the appellant, and are filed by him as evidence of the interests he acquired in the land, -with his answer to the bill of Gillispie and wife. He saw, therefore, when he contracted, the extent of his vendor’s interest. He required and received no covenant of warranty. He knew, or is presumed to have known, *that the contracts of the husbands would not pass the equitable estates of their wives, and that they were effectual 011I3' to pass the life estates of the husbands. He agreed to pay for the absolute interest of James, as heir,’ to one-seventh, and these interests acquired by the contracts with Gillispie and S. Rathey, a specific sum.
The contract was entire, and there is nothing on the face thereof from which it can be ascertained at what price the different interests were valued. In relation to the one-seventh, the interest of John James, there is no dispute or controversy. Nor is it shown that the appellant has not obtained all that he was entitled to under the contract with S. Rathey and wife. It does not appear that the validity of this contract has been impeached, or that the appellant has been disturbed in the enjoyment of what the contract vested in John James, and which the latter sold to him. Seth Rathey and -wife, by the contract of *231 January 1804, merely sold and relinquished their equitable interest to the appellee; nor did the latter, by his agreement, covenant with the appellant that they should make any further conveyance. But in regard to Gillispie, though there was no covenant or warranty as to the title of the thing contracted to be sold, there was an implied undertaking on the part of the appellee that the contract of Gillispie was what it purported to be, a contract by a party who was competent to enter into and bind himself by such contract. • In this it appears he was mistaken. Gillispie has succeeded, by the decree of the court, in vacating and annulling the contract, upon the ground of infancy ; and the appellant thereby loses the life interest of said Gillispie in the subject for which he contracted to pay the appellee the sum of three hundred dollars. For this cause he would have been entitled to call for a rescission of the contract. But instead of resorting to this course, he resisted *all efforts of the appellee to procure a rescission ; and he did this, with full knowledge of the pretensions of Gillispie. He purchased from the appellee on the 31st of July 1832. The bill of Gillispie was filed on the 3d of June 1833. He was then apprised of the difficulty as to this interest. He had then paid no part of the purchase money. Instead of abandoning his claim,, he insisted in his answer upon the validity of the transfer in the first instance, or that, from long acquiescence, it could not be then impeached; but in the event of his being mistaken in these views, he claimed the right to recover from Gillispie the consideration paid to him for the sale of his interest, by the said John James.
In a short time after the institution of the said suit by Gillispie, the appellee filed his bill, mainly for the purpose of rescinding the contract; but this was resisted by the appellant; and when, in February 1847, the cause was heard, the court, by its interlocutory decree, gave the appellant the election to rescind the contract, or to pay the purchase money. In this case no fraud is imputed to the appellee. It is nowhere pretended that he knew Gillispie was an infant in 1803, when he sold to the appellee, or when the latter transferred his interest to the appellant in 1832. On the contrary, he had a right, from the long sthence of Gillispie, to presume that the transfer was valid. But the mutual error of the parties, in the substance of the thing contracted for, was a good ground for rescinding the contract; and if the appellant had sought such rescission when the knowledge of the mistake was first acquired, or consented to it when the appellee filed his bill for that purpose so soon after the sale, the parties couid have been placed in statu quo, without injury to either, so far as the record discloses. But he resisted a rescission, and even so late as 1847; and when the election was tendered to him, he still *declined it: He cannot now be permitted to claim a partial rescission.
The contract was entire; an agreement to pay a gross sum for the interests transferred ; and he has no right to rescind one-third of the contract, and enforce the residue. Glassel v. Thomas, 3 Leigh 113. There is no middle ground here between a rescission in toto and an execution in toto. But the record shows a sufficient motive for his not desiring a rescission. In the suit of Gillispie, he claimed to be substituted to the rights of the appellee, and as such, entitled to a decree against Gillispie for the price paid to him by the appellee for his interest in the land; and the court, upon vacating Gillispie’s release, decreed he should refund the consideration with interest, subject to a deduction for rents and profits. The consideration, with interest from 1803, would, in all probability, have much exceeded the value of Gillispie’s life estate in the subject. The appellant may have rested satisfied that the existence of this claim would either induce Gillispie to forego the assertion of his right to the subject, or would more than indemnify him for the price he agreed to pay to the appellee for this particular interest. In truth, it would seem from the record that the appellant was rather disposed to raise up objections to his own title, so long as they would avail him to resist the claim of his vendor for payment. It does not appear that he instituted any proceedings to set aside Spencer’s decree; and it was not until the dismissal of the bill filed by Spencer’s administrators that said decree was ascertained to be inoperative. He took no steps to procure a legal title from Spencer’s heirs. He refused to rescind, though apprised at an early day, of the mistake as to Gillispie’s interest. He has avathed himself of his right, as representing his vendor, to repel the claim of Gillispie until he shall refund the price he received from John James, *with the long arrears of interest. In the mean time, he has held all he contracted for, and enjoyed the profits. 1 think the court properly required him to pay the purchase money when he declined to rescind the contract.
It is further argued, that the court erred in giving interest on the three hundred dollars from the date of the contract; that it was not payable but upon a contingency which has never happened. The contract recites that it was in consideration of three hundred dollars in hand paid; and the bond was payable presently, though a condition was attached, in the nature of a defeasance, upon a certain contingency. The appellee bound himself, by the contract of sale, to give immediate possession ; and the appellant, by his answer, admits that he was in possession. He has enjoyed the profits, and in equity should pay interest on the price contracted to be paid : and that, -it seems to me, is the effect of the bond and agreement. The latter shows a cash sale, and the bond admits an existing debt due presently, but liable to be defeated in the event of his failure to set aside the *232 decree or get a title. It seems to me that interest was properly allowed from the date of the contract.
I am for affirming the decree.
MONCURE and LEE, Js., concurred in the opinion of Allen, J.
SAMUELS, J., dissented.
Decree affirmed.