SAMUEBS, J.
I am of opinion to reverse the decree, and dismiss the bill without prejudice to the rights of the parties to sue at law. There is nothing alleged .in the pleadings, or shown by proof, to warrant the exercise of the power to decree specific performance. This would be my opinion if the case stood alone upon that clause of the agreement which is supposed to bind the appellants to convey. The case, however, should not be so regarded; but in passing on it, every part of the agreement should be looked to: we should not disregard any part of it. It is distinctly agreed between the parties, that the action of ejectment between them shall be submitted to the arbitrament of the referees named; that the value of the subject in controversy shall also be ascertained by those referees; that upon the return of the award the appellants should convey to the ^appellee the subject of controversy. This part of the agreement is, of necessity, to be understood as meaning that the conveyance shall be executed if the action of ejectment shall be decided by the referees in favor of the plaintiffs therein : for it would be absurd to construe it as meaning that if decided .the other way, the parties having no title should sell, and the party having title should buy.
The agreement further provides that the submission shall be made a rule of court, and that the court should enforce the performance of the agreement as if the same were a judgment of the court. This, if it means any thing, means that the purchase money was to be secured by the judgment of the court. The parties, to some extent, put their own construction on the ¿greement by submitting the ejectment suit to the arbitrators; thereby showing that the decision of that suit was to have its effect upon the agreement. In the ejectment the main question was, who had the right to possession, and incidentally, who should pay the costs of suit. This question is not yet decided ; the award returned being upon a subject in no wise involved in the suit. By the express terms of the agreement, the conveyance was to be made upon the return of the award, which has not yet been made. If the parties intended to submit the sole question of value to the arbitrators, and to bind themselves to sell and buy at their valuation, nothing would have been easier than to have so provided in the agreement. If, however, they intended that the question of title should be first settled, that if the appellants had the better title, they should sell to the appellee, the agreement in all its parts should be allowed to stand, and its several provisions be carried into effect. To tear one single provision of the agreement from its context; to give it priority over another to which it was expressly postponed; to make it, in fine, the agreement in disregard *of all else therein ; to withhold from the appellants the benefit of their better title, if they have it; to compel them to sell a title in litigation, at a price affected by the fact that it was contested, in disregard of the provision for settling the question of title, would be unjust to both parties. I am not aware of any precedent requiring us to treat the agreement in this manner; and I am utterly opposed to making such precedent.
DANIEE, J.
If the order of reference of the 2d of January 1851 were alone to be looked to for the terms of the submission, the award would be incomplete; as by the order “all matters in difference between the parties” are submitted to the “final determination” of the arbitrators, whilst by the award nothing is adjudged or ascertained except the value of the lots in controversy. It is most apparent, however, from the award, from the bill, from the answer, and from the petition for an appeal, that the arbitrators and the parties all regarded, and acted upon, the agreement of the day of December 1850, as containing the true terms of the submission.
Treating the agreement, then, as the warrant for the action of the arbitrators, I can discover no plausible reason for saying that they have, in any manner, departed from the authority, or fallen short of a complete discharge of the duty conferred upon and prescribed for them. After reciting the pendency of the action of ejectment, and that it involved the title to certain lots, and expressing the desire of the parties finally to settle the suit, the agreement proceeds, “Now, therefore, it is *521 herein agreed that the said parties shall forever end and conclude the controversy, in said suit mentioned, in manner and form following, to wit: That the matters in controversy shall be and are hereby referred and submitted to the final award ';;'and determination of Robert Edmond and B. W. Haxall, agreed to and chosen by the said parties as their arbitrators, so as the said arbitrators do make their award and determination of and concerning the said controversy, for the following end and purpose, to wit: tkat is to say, that the said arbitrators after having satisfied themselves of the value of the said lots above mentioned and numbered, shall affix to, and declare in writing, under their hands and seals, the real and actual value of the same, as they, in the exercise of their judgments, shall think right and proper; and if they the said arbitrators do not agree as to the value of the said lots, then the said arbitrators shall call in some disinterested third person, to be by them chosen and elected, who shall with them confer and consult as to the value of the said lots, and, with them, determine the same, and shall declare in writing, under their hands and seals, the said value; to be delivered to the parties hereto, on or before the day of next ensuing. ”
The words in the first portion of the article would seem to indicate an intent to submit the whole matter in controversy to the arbitrators; but it is obvious that, with the words (which I have italicised), “for the following end and purpose,” &c., commences a qualification or' restriction, limiting the action of the arbitrators to the single “end and purpose” of ascertaining and declaring the value of the lots. With respect to the title to the lots, the arbitrators had nothing to determine or award. Their office was done, and the object of the first article accomplished, as soon as they fixed and reported the value of the lots; and a subsequent article provided that upon the return of the award, the parties of the first part should convey the lots to the partj-of the second part, and that the latter should secure and pay to the former the value ascertained by the award. In short, the scheme for *the settlement of the suit was, that the appellants should sell and the appellee should buy the lots at a price to be fixed by disinterested valuers. There is, therefore, I think, no ground for assailing the decree as being founded on an insufficient award.
Nor do I think that the error of the court in requiring Mrs. Branch, a married woman, to execute a deed with general warranty, is of such a nature as io vitiate the decree. The inadvertence is one which it is obvious could work no injury to Mrs. Branch, or any one else; in as much as by the statute, Code, ch. 121, g 7, p. 514, such a deed could not operate any further on her or her representatives than to pass such right, title and interest as at the date of such deed she might have in the estate thereby conve3’ed. If, therefore, there were no other objection to the decree, I should feel no difficulty in affirming it, after making the proper correction.
In considering the case, however, a more serious question has arisen, which, at the instance of the court, has been fully discussed at the bar; and that is, whether the coverture of Mrs. Branch did not stand in the way of any decree, for a specific performance of the agreement and award against her or her husband, or indeed any of the appellants: It is not necessar3r to cite authorities to show that no such decree could be made against Mrs. Branch.
The question whether a court of equity will, under any circumstances, decree against a husband the specific performance of a contract on his part to procure the conveyance by his wife of her real estate, is one which cannot be regarded as yet definitively settled in England. In the reports of the earlier cases, numerous precedents nwy be found in which the power of the chancellor to make such decrees has been asserted and enforced. Thus, the case of Hall v. Hardy, 3 P. Wms. 187, in which, upon a submission of a dispute ^'touching the fee simple of a parcel of land, the arbitrators awarded that the defendant should procure his wife to join with him in a fine and deed of uses, and thereby convey the premises to the plaintiff and his heirs, the master of the rolls, Sir Joseph Jekyll, decreed a specific performance of the award: prefacing the decree with the remark that there had been a hundred precedents, where, if the husband, for a valuable consideration, covenants that the wife shall join with him in a fine, the court has decreed the husband to do it; for that he had undertaken it and must lie by it, if he does not perform it.
In some of the cases of a later date, however, the propriety of making such decrees has been seriously questioned, and in others, positively denied; as in Emery v. Wase, 8 Ves. R. 505; Davis v. Jones, 4 Bos. & Pull. 267; and Martin v. Mitchell, 2 Jac. & Walk. 413. And whilst it cannot perhaps be said that the English chancery has fully disclaimed the power, it may, I think, be safely affirmed, that the current of professional feeling and sentiment in England is rapidly tending to a conviction of the im-policy, cruelty and unfairness of a rule which constrains the wife indirectly through the sufferings of the husband, to do that which the courts have long since repudiated their right to coerce her to do directly. In speaking of the earlier cases, Mr. Jacob, in a note to 1 Roper on Husband and Wife 547-8, says, “It may be said with respect to most of these cases, that they were decided at a period when the courts exercised a much greater latitude than at present in cases of this kind. Thus it would seem that in some instances the decrees were made against the wife personally. In one case it was decreed that a man should compel his wife and another man’s wife to levy a fine, &c. Since the limits of the jurisdiction of equity in the specific performance *522 of agreements, and the rules as to the disabilities *of coverture have been more clearly settled, these early cases cannot now be received as authorities without some qualifications.”
And in the case of Emery v. Wase, Eord Eldon said that the argument showed “the point was not so well settled as it had been understood to be. The policy of the law is, that a wife is not to part with her property but by her own spontaneous and free will. If this was perfectly res integra, I should hesitate long before I should say the husband is to be understood to have gained her consent, and the presumption is to be made that he obtained it before the bargain, to avoid all the fraud that may afterwards be practiced to procure it. The purchaser is bound to regard the policy of the law, and what right has he to complain, if she, who according to law cannot part with her property but by her own free will, expressed at the time of that act, of record, takes advantage of the locus poenitentiae; and why is he not to take his chance of damages against the husband?”
Similar views are strongly presented in a note in 1 Roper on Husband and Wife S4S ; and the annotator adds, “some of the cases seem to have proceeded partly upon the fact of the wife having herself been a party, or having assented to the agreement, or upon the presumption that she had assented. But if it be law that the agreement of a feme covert is void, it is difficult to find any principle upon which her assent or dissent at the time of the contract 'could vary the case.” These views are also adopted in Bright on Husband and Wife, vol. 1, p. 191, to which author, as also to the notes to Emery v. Wase, reference may be had for a statement of the principal English decisions on the subject.
I do not know that the question has ever been distinctly before this court on a bill, filed by a vendee, seeking the specific execution of a contract for the sale, by a husband or by a husband and wife, of the wife’s lands.
*In the case of McCann v. Janes, 1 Rob. R. 256, the bill was filed by a vendee against a husband on an undertaking by the latter, that he and his wife should make to the plaintiff a good deed for the wife’s inheritance in fee; but a specific performance of the agreement was not asked. After setting out the contract, the bill alleged that the defendant had refused to comply, stating, as his' excuse, that his wife had refused to join him in the deed. It further alleged that there were children of the marriage, and that the husband was consequently entitled to a life estate; and the prayer was that the defendant should be decreed to convey all his interest in the land to the plaintiff, reserving to the latter his right of action at law against the husband for damages on account of his failure to procure his wife to unite with him in the conveyance.
The Circuit court sustained a demurrer to the bill, and rendered a decree dismissing it. On an appeal, the decree was affirmed ' by this court. The judge of the Circuit court, in his opinion, assigned two reasons for sustaining the demurrer: 1. That he could not entertain a bill for a. specific performance in part, with a right to resort to a court of law for the recovery of damages for the residue: And 2. That a husband could not be decreed to convey a life estate in his wife’s lands during her life. No reason was given by this court for affirming the decree; but the reporter, in a note to the case, states that he had been informed by one of the judges that the affirmance was made on the first ground taken in the opinion of the circuit judge.
It will be seen from this statement of the case that it did not present the question under consideration. The failure of the plaintiff, however, to ask a decree for specific execution of the contract, is a strong circumstance to show an acquiescence by the bar in the propriety of the doctrine on the subject, held by this *court in the cases of Evans & wife v. Kingsberry, 2 Rand. 120, and Watts v. Kenney and wife, 3 Leigh 272; in each of which, though the bill was filed by husband and wife for a specific execution against a vendee under a contract with the husband for the purchase of the wife’s land, the court considered it necessary to decide what ought to have been the decree if the suit had been brought by the vendee; and in each of which the court, holding that such a decree could not have been properly rendered in favor of the vendee, refused to decree specific performance in favor of the vendors, on the score of want of mutuality. In the last mentioned case Judge Tucker, delivering the opinion of the court, said, “As to compelling the husband to procure a conveyance, the doctrine, never well received, has never been acted upon with us, and seems recently to have been discountenanced in England. Emery v. Wase, 8 Ves. R. 505; 4 Bos. & Pul. 267. It is true that in' a recent case it has been said that if the wife assents, the husband will not be permitted to recede. Howell v. George, 1 Madd. R. 1-7. But so easy is it where family convenience and profit concur, for the influence of the husband to withhold the assent of the wife, that practically the doctrine can never be of use.”
This opinion was approved by the whole court, as was also that of Judge Green of the like import, in the case of Evans & wife v. Kingsberry. Whilst, therefore, I do not find any precedent in our reports of a direct refusal by this court to decree at the suit of the vendee, the specific performance of a sale by a husband of his wife’s estate, yet in the absence of any case or opinion here questioning the propriety of the two last cited decisions, I feel no hesitation in recognizing them as true expositions and ruling adjudications of the law of this case.
It is true that no objection to a specific performance *was made by *523 the defendants in their answer, on the score of Mrs. Branch’s coverture; and it is urged on behalf of the appellee, that this court ought not to proceed on the supposition that she may not be willing to unite in the conveyance. The same feature existed in the case of Emery v. Wase. Yet it was not regarded by the master of the rolls, when the case was before him (5 Ves. R. 847), or by Eord Eldon, on the appeal (8 Ves. R. SOS), as a circumstance of any moment.
In that case, as in this, the defendants all united in one answer, in which they resisted the decree, on grounds wholly independent of the coverture of some of the female defendants; yet the court gave the same weight to the objection as if it had been distinctly and formally presented. The appellants all strenuously resisted the decree in the Circuit court, and are all seeking to reverse it here; and little if any chance of benefit to the appellee could be anticipated from sending the case back, in order, by privy examination (if indeed such a practice could in any case be allowed here), to ascertain whether Mrs. Branch will choose to unite in a deed, as there can be little or no doubt as to what her response would be.
It is further urged by the counsel of the appellee, that though this court should be of opinion that the decree was wrong in ordering a full and entire performance of the agreement, still a dismission of the bill would not be the proper or necessary consequence ; that in such case the court ought to allow the appellee the election to have a conveyance of so much of the subject he bargained for as is within the reach of the court, with an abatement of the purchase money proportioned to the share or interest of Mrs. Branch.
If the appellee is willing to accept, in satisfaction of the agreement, a deed for the undivided interests of the appellees Clarke and Harris in the lots, with an abatement of the purchase money equal in value to *the entire interest and estate of Mrs. Branch in the subject, I cannot perceive the injustice or inconvenience of allowing him to have such a modified performance of the contract. There is nothing in the proofs to impeach the fairness of the agreement or the award. There is not the slightest reason for imputing fraud or even laches to the appellee. He has promptly done or tendered to do every thing which by the covenant or the award he has agreed, or has been awarded to do. On the other hand, the appellants have wholly refused to conform to the award. They have resisted it on each side of the Circuit court, on grounds of objection which the judge has decided to be insufficient. Hike objections have been made here, and have met with the same fate. And nothing stands in the way of affirming, in every thing, the decree for a specific execution, except the want of power in the court to coerce a conveyance of the estate of the married female appellant: a difficulty, suggested here for the first time. In this state of things what show of equity have the appellants for insisting that because they cannot comply with their whole undertaking, they shall also be excused from performing such portion of it as is clearly within their power?
I see nothing in the nature of the contract, and know of no rule of practice, which forbids a termination of the controversy in the mode proposed. On the contrary, it is a familiar practice to make decrees for the partial performance of contracts, with compensation to the injured party, in cases where the measure of compensation is certain or easy of ascertainment. Thus, in Mortlock v. Buller, 10 Ves. R. 292, 316, Eord Eldon says, “If a man having partial interests in an estate, chooses to enter into a contract representing it and agreeing to sell it as his own, it is not competent for him to say after-wards, though he*has valuable interests he has not the entirety, and therefore the purchaser shall not have the benefit of his contract. Por the purpose of this jurisdiction, the person contracting under those circumstances is bound by the assertion in his contract; and if the vendee chooses to take as much as he can have, he has a right to that and to an abatement.”
The same doctrine is asserted in Wood v. Griffith, 1 Swanst. R. 43, 54. “The purchaser may insist on having the estate such as it is. The vendor cannot say that he will give nothing, because he is unable to give all that he has contracted to give.”
And Judge Story, in the second volume of his Treatise on Equity Jurisprudence, § 779, on the authority of a number of cases which he cites, states the general rule in such case to be, “that the purchaser, if he chooses, is entitled to have the contract specifically performed as far as the vendor can perform it, and to have an abatement out of the purchase money, or compensation for any deficiency in the title, quantity, quality, description or other matters touching the estate.”
It is true that he says, “the practice had been extended beyond the true limits to which every jurisdiction of the sort should be confined, as it amounted pro tanto to the substitution of what the parties had not contracted for; and that the tendency of modern decisions is to bring the doctrine within such moderate bounds as convenience and equity indicate as its proper limits. ” He at the same time, however, cites with approbation the remarks of Lord Langdale in the case of Graham v. Oliver, 3 Beav. R. 124, in which, after admitting the difficulties that existed in the way of carrying the rule to the extent that had prevailed in some of the cases, he vindicates the justice of adhering to it in cases where it can be observed “without any great preponderance of inconvenience.”
*And a distinction is very properly recognized by the courts between the case of a vendor seeking to compel the vendee to perform, and that of the vendee *524 asking a performance by the vendor. Though, therefore, the courts have refused, as in Dalby v. Pullen, 3 Sim. R. 29, and in other cases, to compel a vendee, who has contracted for the entirety of an estate, to take undivided aliquot parts of it, it by no means follows that it is improper to compel the vendor to convey such undivided parts, where the vendee is willing to accept them, with a proper abatement of the price, in lieu of the whole estate for which he contracted. On the contrary, in the case of the Attorney General v. Day, 1 Ves. sen. 218, Eord Hardwicke, whilst refusing to compel a vendee who had contracted for an entire estate, to take a moiety (a conveyance of the other by change of circumstances being impracticable), said, “On the other hand, if on the death of one of the tenants in common who contracted for a sale of the estate, the purchaser brings a bill against the survivor, desiring to take a moiety of the estate only, the interest in the money being divided by the interest in the estate, I should think (though I give no absolute opinion as to that) he might have a conveyance of the moiety from the survivor, although the contract cannot be executed against the heirs of the other.”
The same principle is fairly to be deduced from the case of Roffey v. Shallcross, 4 Madd. R. 227, and also from a decision of Eord EJldon, in Ex parte Tilsley, reported in the note to that case; and is, I think, fully sustained in Sugden on Vendors, vol. 1, 415-426, 7th Am. ed. as well in the text as in the authorities cited in the notes.
It is suggested that these views are in conflict with the decision of this court in Bailey v. James, 11 Gratt. 468. On an examination of that case it will be seen, that it is wholly different in character from the one *before us: And I mention it only because of the suggestion just mentioned, and for the purpose of saying that I do not mean to call in question the authority of that case by any thing said in this.
I can see, therefore, no objection to allowing the appellee to have a partial performance to the extent and on the terms above indicated. I do not think, however, that he ought to have a conveyance of the life estate of the appellant Branch, unless he is willing to take that together with a conveyance of the undivided interests of the appellants Clarke and Harris in full of his demand. The difficulty of estimating the value of Mrs. Branch’s interest, subject to the life estate of her husband, would of itself constitute a serious objection to decreeing compensation for its loss. Evans v. Kingsberry, 2 Rand. 120. Such an estimate would of necessity be of a speculative character; and whilst there are rules for calculating the value of such interests, which have been adopted by the court in cases rendering such calculations necessary, I feel no disposition to multiply, unnecessarily, occasions for a resort to them.
It is true that in a note in 1 Roper on Husband and Wife 549, it is' suggested that in cases where the wife has only a partial interest in the estate as jointure or dower, the purchaser might be'allowed to take such title as the husband can give, deducting from the purchase money a compensation for the wife’s claims. Be that as it may, I have seen no case in which a purchaser from husband and wife of the wife’s inheritance has been allowed to take the husband’s interest, and compensation for the principal estate, the main and substantial object of the contract, left outstanding in the wife.
On the whole, I think that the decree ought to be reversed, and the cause remanded, with instructions to the Circuit court to allow the appellee the option of 'x'taking a conveyance by the appellants Harris and Clarke, and the male appellant Branch, of their interests in the lots, the appellee paying the full amount of the value awarded, or a conveyance of the undivided shares of Harris and Clarke, with a deduction from the full amount of the value aforesaid, of so much thereof as is equal to the value of Mrs. Branch’s undivided share in said lots; and in case the appellee refuses to avail himself of such liberty, to dismiss his bill, with costs, but without prejudice to his legal rights.