## RATTNER v. KLEIMAN et al.

No. 8550.

Court of Civil Appeals of Texas. San Antonio.

Feb. 18, 1931.

Galbraith & Goodrich, of Brownsville, for appellant.

John C. Myrick, of Harlingen, for appellees.

FLY, C. J.

This suit was instituted by Rebecca Kleiman, joined by her husband, L. Kleiman, on promissory notes aggregating $32,000, given for part of the purchase money on twenty-nine acres of citrus fruit land in the valley of the Rio Grande. The original price for the land was $44,000, of which the sum of $12,000 had been paid. No testimony was heard except the notes introduced by appellees, and judgment was rendered for the sum of the notes, with interest at 6 per cent. from the date of execution.

Appellant filed an answer setting up the insanity of Rebecca Kleiman, and he sought to cancel the whole transaction about the land and to recover the $12,000 already paid by him. The court sustained the exceptions to the answer, and, although the judgment recites that all parties announced ready for trial, no testimony was offered by appellant. The only question on this appeal is as to the legality of the action of the court in sustaining the exception to that portion of the answer alleging the unsound condition of Rebecca Kleiman's mind at the time and since the execution of the deed to appellant.

The insanity of Rebecca Kleiman did not render the deed made by her void, but merely voidable. Williams v. Sapieha, 94 Tex. 430, 61 S. W. 115. No doubt but that under appropriate circumstances the disability of insanity or of minority could be invoked to procure the rescission or cancellation of an instrument in writing executed by the person laboring under such disability. The rescission could be secured by the maker of the instrument by a repudiation on regaining reason or reaching majority, and we doubt not through a guardian or next friend. This proposition of law, which will not be disputed by any one, places it in the power of the person laboring under the curse of insanity at some time to repudiate an instrument made by such person, at any time to destroy such instrument, and at the same time destroy rights of an innocent party. The blow may fall after many years, for limitations are powerless against such person. The property may have vastly increased in value, and all that the vendee owns may have been expended upon it, but, under the theory advanced by the appellees and sustained by the trial judge, the vendee has no remedy for the situation, but must sit supinely beneath the sword of Damocles which may break its slender thread at any moment and bring destruction upon him. Whenever the propitious time arises, the deed may be repudiated, and no return of the purchase mony can be demanded or accomplished, because the person under disability cannot be forced to refund, unless it be proved that the money was received by such person or that it is still in his possession, a task probably impossible to be accomplished.

Under the ruling of the trial judge, appellant is compelled to pay $32,000 for land, the title to which may be held uncertain for years, and then possibly result in loss of the land and money, and the prospective victim is informed that he has no remedy in law or equity to protect him from such loss. If there had been any desire to do equity and extend justice to the vendee, appellees could have secured the appointment of a guardian for the person of unsound mind, and thus opened up a method of either protecting the title or rescinding the contract. That was not done, but a woman whose unsoundness of mind is not denied is permitted to go into court and prosecute her suit and flaunt into the face of the vendee the proposition that, while she is insane, she alone can breach that contract and make her sanity a subject of inquiry. We have seen no authority that sustains such a contention. On the other hand, as said in section 410, p. 649, 27 R. C. L.: "Where the transaction is an assignment of the right under an executory contract of purchase, it is held that the assignor impliedly warrants that the contract of sale is not rendered unenforceable by reason of any incapacity on the part of the vendor to contract, and if such an incapacity exists this will afford ground for the rescission of the assignment by the assignee." That quotation is fortified by a Virginia decision. Bailey v. James, 11 Grat. (52 Va.) 468, 62 Am. Dec. 659.

None of the Texas decisions uphold the contention of appellees, but merely reiterate the right of the insane person to repudiate a contract made while laboring under the disability. We have seen no case holding that the vendee in a contract of sale could not be relieved from a contract open to attack by the vendor at some time. No one has assailed or questioned such authority, and we have never before been confronted with the contention that the vendee of an insane person can be held on the rack of suspense and torture as to his title and be compelled to lose, not only payments made, but to pay other sums as they may become due on the purchase money. If the sale may be canceled by the vendor on account of a disability to contract, that same disability should entitle the vendee, whose money and title to the land are at stake, to cancel the deed. The law of self-protection, self-preservation, should intervene in his behalf.

We have been unable to discover much authority; the Virginia case hereinbefore cited being more in point than any brought to our

attention. That case, Bailey v. James, 11 Grat. (52 Va.) 468, 62 Am. Dec. 659, however, sustains the ruling of this court, as is indicated in the following quotation therefrom: "But in regard to Gillispie, though there was no covenant or warranty as to the title of the thing contracted to be sold, there was an implied undertaking on the part of the appellee that the contract of Gillispie was what it purported to be, a contract by a party who was competent to enter into and bind himself by such contract. In this it appears he was mistaken. Gillispie has succeeded, by the decree of the court, in vacating and annulling the contract upon the ground of infancy; and the appellant thereby loses the life interest of said Gillispie in the subject for which he contracted to pay the appellee the sum of three hundred dollars: For this cause he would have been entitled to call for a rescission of the contract. * * * But the mutual error of the parties, in the substance of the thing contracted for, was a good ground for rescinding the contract; and if the appellant had sought such rescission when the knowledge of the mistake was first acquired, or consented to it when the appellee filed his bill for that purpose so soon after the sale, the parties could have been placed in statu quo, without injury to either." The ruling is founded on the rules of good conscience and the highest equitable principles.

The parties to such a contract are treated as having equal rights to a rescission of the contract by Black in his work on Rescission and Cancellation, §§ 206, 254, 427, 529, and 667. In section 206 it is stated:

"At present, we are concerned with the general rule that, as soon as it has been definitely ascertained that one of the parties to a contract is unable or incompetent to carry out his part of the agreement, the other party will be justified in rescinding the agreement."

In section 254 the authority states:

"In the case of an insane person—that is, one who is wholly unable from mental derangement to make a binding contract—the law presumes fraud from the relative condition of the parties, the presumption being stronger or weaker according to the position of the parties with respect to each other; and if the other party to the contract had notice or knowledge of the existing insanity, his action in concluding a bargain with the insane person, knowing the disability, constitutes a constructive fraud which authorizes the courts to grant relief, even though there was no actual fraud or undue influence. But if the contracting party had no knowledge of the other's insanity, and dealt with him in entire innocence and good faith, and if, for this reason, the contract cannot be regarded as absolutely void but as voidable at most, still there remains the fact that an insane person cannot give that intelligent consent without which a valid contract cannot be formed, and hence, in this case also, the contract may be avoided or set aside on equitable terms. And the doctrine that where one of two innocent persons must suffer, the loss should fall on him who made the condition possible, has no application to cases where it is sought to set aside a deed on the ground of the insanity of the grantor, for an insane person cannot be held responsible for consequences which he could not understand or prevent."

In section 427 it is stated:

"When a vendor of land, who has bound himself to convey at a given time or on performance of stipulated conditions, is unable to give a good title to the property when called upon to do so, either because he never held the title or because he has failed to acquire a title which he expected to acquire or because he has been unable to clear the title from clouds or hostile claims, the purchaser will be entitled to abandon the contract and refuse to make payment of the price, or, if he has made a partial payment, he will be entitled to rescind the contract and recover back what he has given. And in the absence of an explicit agreement on the point, the vendor is bound to tender a good and marketable title within a reasonable time, and on his failure to do so the vendee is entitled to rescind. Nor is a total want of title in the vendor necessary to the application of this rule, for if there are material defects in the title which he holds, of which the vendee had no notice at the time of contracting, and which the vendor has failed to cure before the time for delivering a deed, this also will justify the purchaser in demanding a rescission of the contract. And it is to be noted that the vendee's right to rescind in this case is entirely independent of any fraud, concealment, or false representations on the part of the vendor. Failure of title is ground for rescission even though there was no fraud whatever and both parties believed the vendor to hold a good title to the property. But this is only in the case of an executory contract."

It will be noted that no such doctrine is promulgated that, while the insane person may obtain equitable relief, the sane vendee, without notice of the insanity of the vendor, can obtain no relief. Such doctrine is monstrous and utterly untenable. The evidence as to the sanity of Mrs. Kleiman at the time and subsequent to the execution of the deed should have been heard, and proof made of such insanity. If her condition was unknown to appellant at the time the deed was executed, he is entitled to a rescission of the contract and a judgment for payments already made by him on the land.

The judgment is reversed, and the cause remanded.