## PILOT LIFE INS. CO. v. OWEN.

Circuit Court of Appeals, Fourth Circuit. April 9, 1929.

No. 2759.

H. J. Haynsworth, of Greenville, S. C. (C. F. Haynsworth and Haynsworth & Haynsworth, all of Greenville, S. C., on the brief), for appellant.

A. C. Mann, of Greenville, S. C. (J. L. Plyler and Mann & Plyler, all of Greenville, S. C., on the brief), for appellee.

Before WADDILL and PARKER, Circuit Judges, and COLEMAN, District Judge.

WILLIAM C. COLEMAN, District Judge. This is an appeal from a judgment rendered by the District Court of the United States for the Western District of South Carolina, in a suit upon a life insurance policy. The action was originally begun in the court of common pleas for Greenville county, S. C., and from there removed to the District Court.

The material facts are these: The Pilot Life Insurance Company (formerly the Southern Life & Trust Company), hereinafter called the Company, issued to one James Robert Owen, a building contractor, a policy of life insurance, effective April 29, 1919, insuring his life in the sum of $7,500 in the event of death before the age of 60, and in the sum of $5,000 in the event of death after 60 and before 70, for an annual premium of $234.20 up to the age of 60, and $178.35 thereafter. The appellee, the wife of the insured, hereinafter called the plaintiff, was named the beneficiary. The insured paid seven annual premiums in full, but on the 1926 premium due July 1st, he paid on account $44.55, and pursuant to his original instructions and in accordance with his right under the policy, a dividend which had accrued to him of $38.10 was applied by the Company in further reduction of the premium. At the same time, that is, on or about August 1st and presumably within the 31 days of grace allowed within which to pay premiums, the insured applied to the Company for an extension to October 1, 1926, within which to pay the balance, namely, $151.55, still due on the annual premium, with interest. On August 5th such extension was granted by the Company's president, as he was empowered to do, with the proviso that "if payment be not made when due by the terms of the extension, then without grace and without further notice, the policy shall lapse and become void as of the due date, except that the right of the insured provided in said policy to elect an option on surrender will be the same as if no such extension had been granted." No further payments being made, on October 1, 1926, the Company declared the policy to have lapsed as of December 12, 1926, with a cash value of $741.25. That is to say, the partial payment made on the 1926 premium was sufficient to increase the policy's cash value by an amount equivalent to the increase allowed upon payment of a full quarterly premium. However, on March 1, 1926, the insured had procured a loan of $696 on the policy which, together with accrued interest, amounted to $706.44, and was deductible, pursuant to the provisions of the policy, from the cash value, leaving a balance of $34.81 which reduced the extended insurance value, as the Company claimed, to $235. On January 12, 1927, the insured died at the age of 46 of sclerosis of the liver and Bright's disease. He was given to the excessive use of alcohol, and for 18 months or more had been in failing health, but continued to attend to business affairs until less than a month before his death. The plaintiff, in due course, filed the requisite proofs and made claim for the full amount of the policy, namely, $7,500 with interest from the date of her husband's death, but the Company replied, denying liability under the policy for any amount except for $235 as extended insurance.

The case was tried before a jury, and at the conclusion of the testimony the Company moved for an instructed verdict against it for the sum of $235 only, being the amount of the extended insurance. This motion was denied, whereupon the jury returned a verdict against the Company for $7,033.63, and in due course judgment for that amount was entered. A motion for a new trial was filed, but overruled.

Besides the assignment of error raising the question of the trial court's refusal to direct a verdict, there are seven other assignments, but it is not necessary to refer to them specifically, because a consideration of the

question whether the trial court was correct in refusing to grant the motion for a directed verdict necessarily embraces a consideration of all of the questions raised by the other assignments of error. Summarized, the answer as to whether the trial court was in error in refusing the motion depends upon the answer to the following questions: (1) Had the default of the insured on October 1, 1926, in the payment of the balance ($153.83) of the annual premium due July 1, 1926, been (a) excused by the disability of the insured, or (b) by waiver on the part of the Company; and (2) assuming that such default had been neither excused nor waived, was the only right which the insured had under the policy a right to the extended insurance, computed in the amount and manner claimed by the Company as embraced in its motion for a directed verdict?

 The contract of insurance was made in South Carolina when the policy was there delivered to the insured upon payment of the first premium. Northwestern Mut. Life Insurance Co. v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57. It is, however, to be construed by the general commercial law as enforced by the federal courts, which are free to exercise their own judgment, independently of state decisions. Carpenter v. Providence Washington Insurance Co., 16 Pet. 495, 511 (10 L. Ed. 1044); B. & W. Taxi Co. v. B. & Y. Taxi Co., 276 U. S. 518, 530, 48 S. Ct. 404 (72 L. Ed. 68, 57 A. L. R. 426). We will consider first the question as to the disability of the insured, and what effect, if any, it had upon his rights under the policy.

The disability provision in the policy is as follows:

"If, while this Policy is in full force and effect and before default in payment of any premium, proof satisfactory to the Company is furnished that the insured, while under age sixty, and prior to the maturity of this Policy in any respect, has become wholly disabled by accident or disease, sustained, or contracted after this Disability Insurance Provision becomes effective so that the insured has thereby become, and presumably will be for life, wholly, continuously and permanently unable to pursue or engage in any gainful occupation, or to perform any work mental or manual for compensation or profit (hereinafter referred to as 'such disability'):

"Upon written request by all parties in interest accompanied by this Policy the Company will agree, by endorsement hereon, to waive the payment of premiums as they become due during 'such disability,' and, beginning six months thereafter, if 'such disability' continues, the Company will pay to the Insured a monthly income of *ten dollars for each one thousand dollars* of Insurance payable at Age Seventy, during 'such disability' prior to the maturity of this Policy. All said payments will be due at the Home Office, but without presentation of this Policy."

No proofs of disability were ever furnished the Company, nor was any claim presented until after the death of the insured. Nevertheless, plaintiff. claims that the evidence on the question of disability is entirely ample to show that the insured was not only disabled on December 12 and October 1, 1926, but even before July 1, 1926, when the last regular premium became due; in fact, even as far back as the early spring of that year. But we do not find this to be borne out by the testimony. The insured was in poor health for some months previous to his death, but as late as December 14, 1926, that is, within a month of his death, he was actively conducting his business and continued to supervise the prosecution of work under various building contracts he had made, and which sometimes required him to travel to nearby towns. Therefore we are forced to conclude that no such disability existed as would have entitled the insured to the benefit of this particular provision of the policy. A partial, noncontinuous disability was not sufficient. One is not deemed totally disabled unless he is no longer able to do his accustomed task and such work as he has been trained to do, and upon which he must depend for a living. Metropolitan Life Insurance Co. v. Bovello, 56 App. D. C. 275, 12 F.(2d) 810, 51 A. L. R. 1040. The law of South Carolina appears to be in accord. Taylor v. Southern States Life Insurance Co., 106 S. C. 356, 91 S. E. 326, L. R. A. 1917C, 910.

In view of our conclusions with respect to the extent of disability of the insured, it becomes unnecessary to analyze further the wording of the disability provision. Nor is it necessary to consider under what state of disability, if any, an insured would be completely excused from giving notice under a provision of this kind.

 Turning to the question of waiver, we are unable to find anything which the Company did or said through its representatives which would constitute a waiver, as claimed by the plaintiff, of the effect of the default which occurred on October 1st. Plaintiff contends that since the Company admits re-

ceiving and retaining premiums to December 12, 1926, this entitled the insured, in spite of the specific stipulation to the contrary in the premium extension agreement of October 1st, to 31 days of grace, which would therefore carry the life of the policy beyond the date of the death of the insured. With this, however, we cannot agree because so clearly in violation of what the parties expressly stipulated, and of what this court has previously declared to be the law in such circumstances. Order of United Commercial Travelers of America v. Belue (C. C. A.) 263 F. 502. So, if there is evidence of a waiver, it must be found elsewhere.

■ From what has already been said with respect to the disability clause, it is clear that plaintiff cannot claim the benefit of the waiver stipulation therein contained. For this provision to become operative there must be not only satisfactory proof given to the Company of the total, continuous disability of the insured, but also the insured must submit written request that the Company waive payment of the premiums "as they become due," namely, not those in default, but those subsequently to become due. On October 1, 1926, there was default in the payment of the premium even though the amount paid by the insured July 1, 1926, may have been sufficient if applied ratably to carry the insurance beyond that date. It is true that after his default on October 1st, the insured did not lose all rights under the policy, but by the very terms of the agreement which he entered into for extending the time of the premium payment, he did lose the right to have premiums waived. Thus, the fact that the Company recognized the right of the insured under the nonforfeiture privileges of the policy did not constitute a waiver of the default made in the premium payment. As already stated, we find nothing in the correspondence or statements of the Company's agents, before or after the death of the insured, on which a waiver may be predicated. As to the theory advanced by the lower court that the reserve of $34.81 should have been used as payment on account of premium for the purpose of keeping the policy in force for the full amount until insured's death, it is sufficient to point out that it is expressly provided this could be done only "upon request of the insured * * * filed at its [the Company's] home office prior to default in payment of any premium." No such request was filed, and therefore the insured was not entitled to the benefit of this provision.

Since, therefore, the default on October 1st was not excused either by disability or by waiver, and since the agreement which extended the premium payment time to that date expressly stipulated that if the insured were still in default at that time, "then without grace and without further notice, the said policy shall lapse and become void as of the due date except that *the right of the insured provided in said policy to elect an option on surrender will be the same as if no such extension had been granted*" (italics inserted), it is obvious that the insured was relegated, by his own conduct and agreement, to the benefits under the nonforfeiture privileges clause and to those only. This must be true because that clause, summarized, provides as follows: That if after three years, premiums shall have been paid in full (as was the case here), if default shall be made in the payment of any subsequent premium, the policyholder shall be entitled to choose (1) the cash surrender value of the policy, or (2) paid-up endowment insurance, or (3) automatic, extended insurance; that the insured might, by surrendering the policy within 31 days after the due date of the defaulted premium, receive the cash surrender value, or that, instead, he might, by written request, within the same period of time, elect to have the policy continued as paid-up endowment insurance for a reduced amount, as provided in the table which forms part of the policy, but that "if no election of Paid-up Endowment Insurance or Cash Value is made by the Insured within the period designated, the amount of insurance hereunder payable at age seventy, including additions, if any, shall automatically be continued, from the date of default as term insurance for the period indicated in Column III of the table below, corresponding to the number of years premiums paid with Final Value, as indicated, payable to the Insured if living at the termination of said period. * * * Any indebtedness to the Company existing at the time of default in premium payment shall be deducted from the full Cash Surrender Value, and the *amount of Extended Term Insurance* and Final Value or Paid-up Endowment Insurance, granted in such case, shall be reduced in the proportion such indebtedness bears to the full Cash Surrender Value." (Italics inserted.) Since the insured did not elect to receive either the cash surrender value or paid-up endowment insurance, the provision for extended insurance automatically applied.

■ The sole remaining question, therefore, is: To what amount of extended insurance was the insured entitled? We have seen that the cash surrender value of the policy at the time of the death of the insured would have

been $741.25 if there had been no indebtedness. However, he then owed the Company $706.44, leaving as a net cash value of the policy only $34.81. Had the insured elected to take the cash surrender value, this is the sum which he would have been entitled to receive; and, similarly, had he elected to receive paid-up endowment insurance, it would have been the basis for estimating the amount of such insurance. But he failed to exercise his option, and $34.81 was thus required to be taken as the basis upon which the amount of extended insurance should be calculated according to the table provided for this purpose, with the result that this amount is shown to be $235, the sum admitted and tendered by the Company as due and owing.

Plaintiff contended, and the lower court held (in its opinion denying the motion for new trial), that the reduction created by reason of the existing indebtedness of the insured was *in the time* of the extended insurance and not *in the amount* for which such insurance was continued; in other words, that the ratio "34.81/741.25 of $5,000.00 equals * * * $235.00," for which the Company contends, is not correct, but that the correct ratio is "34.81/741.25 of 11 years and 4 months, or 136 months equals * * * 6.38 months. The plaintiff further claims that assuming the adopted ratio to be correct, the calculation should have been upon $7,500 instead of upon $5,000, because unless and until the insured reached the age of 60, he was required to pay premiums on $7,-500 and not on $5,000. Calculated on the last-mentioned basis, the amount of extended insurance would be approximately $2,700.

We are satisfied that both of these contentions are unsound. As to the first, it is sufficient to say that the policy expressly provides that "the *amount* of extended term insurance * * * shall be reduced in the proportion such indebtedness bears to the full cash surrender value" (italics inserted), and to say that the word "amount" thus used refers to time and not to money would be to torture the very language of the provision itself. There is no ambiguity in the language. As to the second contention, it is sufficient to say that extended insurance is expressly declared to be $5,000, namely, the amount of insurance

which would have been payable to insured if living at the age of 70, provided the policy had been kept in force by payment of premiums. The method of calculation here adopted is consistent with that in Dwyer v. Metropolitan Life Insurance Co., 139 S. C. 377, 137 S. E. 347, and is also entirely consistent with the decision of this court in Pacific Mutual Life Insurance Co. v. Davin (C. C. A.) 5 F.(2d) 481. See also Federal Life Insurance Co. v. Kemp (C. C. A.) 257 F. 265.

■ It is contended by the plaintiff that the conclusion here reached is unduly harsh—that forfeitures are to be avoided, and that a construction of the policy is to be adopted which is most favorable to the assured. Provided there is ambiguity, these principles are not open to question. McMaster v. New York Life Insurance Co., 183 U. S. 25, 22 S. Ct. 10, 46 L. Ed. 64; Mutual Life Insurance Co. of New York v. Hurni Packing Co., 263 U. S. 167, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102. But there is no ambiguity in the present policy, nor can there be any unreasonableness in requiring one to do what he has voluntarily contracted to do. The time of payment of premiums is material and of the very essence of the contract. "Courts cannot with safety vary the stipulation of the parties by introducing equities for the relief of the insured against their own negligence." New York Life Insurance Co. v. Statham, 93 U. S. 24, 31 (23 L. Ed. 789).

■ Over the Company's objection, the trial judge ordered that his opinion, rendered in denying the motion for a new trial, be printed as a part of the record, but in so doing has requested a ruling by this court as to whether such opinions, to which no exception can be taken, are, under Rule 14, subdivision (2), properly a part of the record on appeal. We hold that it is proper to include them.

The trial judge having erred in his refusal to grant the Company's motion for a directed verdict limiting its liability under the policy to the sum of $235, the judgment is accordingly reversed, and the case remanded for further proceedings in accordance with this opinion.

Reversed.