ENRICO IANNARELLI, *Committee, et al. v.* KANSAS CITY LIFE INSURANCE COMPANY

(No. 7549)

Submitted September 12, 1933. Decided September 26, 1933
(Rehearing denied December 11, 1933)

*Price, Smith & Spilman* and *A. B. Hodges,* for appellant.
*M. H. Bowyer* and *E. B. Dyer,* for appellees.

MAXWELL, PRESIDENT:

Plaintiff, as committee, prevailed in the trial court in seeking to have a life insurance policy declared to be in full force and effect, the insured restored to all rights and benefits thereunder, and to require the defendant to keep the policy in force without further payment of premiums during insured's disability. An appeal was awarded the defendant.

The defendant cancelled the policy because the second annual premium had not been paid within the period of grace provided for in the policy. Insured was adjudged insane before the second annual premium became due and payable and while so incapacitated the period of grace expired.

The policy was dated July 11, 1927, the premium for one year being paid in advance. October 19, 1927, the insured was adjudged insane and The Beckley National Bank appointed as committee for him. He was admitted to a hospital for the insane October 26th following. He was discharged five days later, as "improved". February 16, 1928, he was re-committed to the hospital and remained there until September 3, 1928, when he was sent to his home in Italy, unimproved. The bank resigned as committee in July, 1928, and plaintiff, Italian consul, was appointed and qualified as his committee.

Plaintiff testified that he did not learn of the existence of the policy of insurance until August 15, 1928, four days after the period of grace had expired. This information was contained in a letter from defendant to the insured, dated August 8, 1928, addressed to him at Beelick Knob, his home,

which would have advised him that the period of grace was about to expire; and was forwarded to The Beckley National Bank and by it to the plaintiff. August 17th, plaintiff wrote to defendant stating that insured had been adjudged insane, asking for a photostatic copy of the policy of insurance and requesting blanks on which to make application for reinstatement of the policy. Defendant had received no information of insured's disability prior to this time.

The policy contained this provision, known as a "total disability" clause:

"Upon receipt, at the Home Office of the Company, of due proof, upon blanks furnished by the Company for that purpose, that, after the payment of the first annual premium upon this policy, and before default in the payment of any subsequent premium, and while this policy is in force, and before the insured has attained the age of sixty-five years, the insured has become and is totally and permanently disabled by bodily injury or disease, except as hereinafter provided, and will be continuously and wholly prevented thereby for life from engaging in any occupation, employment or work for wages, gain or profit, and that such permanent and total disability has existed during the preceding period of thirty days, the Company will waive the payment of any subsequent premiums on this policy which fall due during the continuance of such total and permanent disability."

It is the contention of the plaintiff, inasmuch as insured could not furnish the proof provided for in the policy because of his disability, and the plaintiff did not know of the existence of the policy before the period of grace for the payment of the second annual premium expired, that, under such circumstances, proof could be furnished within a reasonable time after expiration of the grace period; that the furnishing of such proof is a condition subsequent.

Defendant contends that receipt by it of proof of disability is a condition precedent to waiving the payment of subsequent premiums on the policy which fall due within the period of such total and permanent disability.

As to whether the giving of notice to an insurance company

by an insured or someone for him of the disability of the insured, within the meaning of an insurance contractual provision such as is here involved, is a condition precedent or subsequent, the courts differ widely. The claim is made for each of the views that it is supported by the weight of authority. For example, in the case of *Rhyne* v. *Ins. Co.*, (N. C.) 154 S. E. 749, wherein support is given to the theory that the furnishing of proof of disability is a condition subsequent, it is opined that such position rests upon a solid legal foundation, and is in accordance with the weight of authority. On the other hand, in the case of *Egan* v. *Life Ins. Co.*, 60 Fed. (2d) 268, wherein the giving of notice of disability is declared to be a condition precedent to the fixing of liability under the policy, the court said that such conclusion was supported by the overwehlming weight of authority. The subject stands *res integra* in this jurisdiction.

As we understand the cases, the main reason advanced by the courts which maintain the "condition subsequent" position is that it would be unreasonable to require an insured to furnish proof of disability if because of such disability he were rendered incapable of furnishing the proof of or giving notice to the company of his condition. This view is adopted by the courts of last resort of quite a number of our states. Some of the cases in this line are: *Swann* v. *Atlantic Life Ins. Co.*, 159 S. E. (Va.) 192, reported subsequently 168 S. E. 423; *Minnesota Ins. Co.* v. *Marshall*, 29 Fed. (2d) 977; *Rhyne* v. *Life Ins. Co.*, *supra; Pfeiffer* v. *Life Ins. Co.*, 174 Ark, 783, 297 S. W. 847; *Marti v. Life Ins. Co.*, 108 Neb. 845, 189 N. W. 388; *Metropolitan Life Ins. Co.* v. *Carroll*, (Ky.) 273 S. W. 54; *Missouri State Life Ins. Co.* v. *LeFevre*, (Texas) 10 S. W. (2d) 267; *Southern Life Ins. Co.* v. *Hazard*, (Ky.) 146 S. W. 1107.

With the greatest deference to the learning and high authority of the courts which adopt the holding that the giving of notice or the furnishing of proof of disability is a condition subsequent, we are of opinion that in reaching such conclusion the contract between the insurer and the insured has sometimes been relegated to a position of secondary importance instead of there being accorded to it the primary im-

portance to which it is entitled. This line of cases discloses two characteristics: (1) "Total disability" clauses are held to be ambiguous and a construction is adopted most favorable to the insured. Illustrative: *Minn. Mu. Life Ins. Co. v. Marshall,* 29 Fed. (2d) 977. (2) Cases arising from accident insurance contracts are relied on to sustain the proposition that the giving of notice of disability is a condition subsequent. *Rhyne* v. *Jefferson Standard Life Ins. Co.,* (N. C.) 147 S. E. 6; *Levan* v. *Metropolitan Life Ins. Co.,* (S. C.) 136 S. E. 304. The reasons which support the "condition subsequent" rule of the accident cases do not apply to the "total disability" clause of a life insurance policy. The distinction is succinctly pointed out in the case of *New England Mut. Life Ins. Co. v. Reynolds,* (Ala.) 116 So. 151, 153, wherein the court said: "We think there is a manifest distinction between that class of cases and this. In such accident cases, the provision is in the nature of a condition subsequent wherein the insurer defends against a liability already accrued. In this case the beneficiary relies upon the waiver clause to keep the policy alive, to excuse the payment of premiums. The disability set up in accident cases is usually the result of the injury insured against. Here there is no insurance against disability, physical or mental."

The policy in suit contains this provision: "Upon failure to pay a premium on or before the date when due, this Policy will become null and void without any action or notice by the Company, and all rights shall be forfeited to the Company, except as hereinafter provided." There is a provision for thirty-one days grace. Also there are certain non-forfeiture and loan features applicable after the payment of premiums for three or more full years. The "total disability" clause above quoted is also to be considered under the above phrase "except as hereinafter provided."

Insanity or incapacitating sickness of the insured will not excuse the payment of premium when due nor relieve against forfeiture of the policy where the policy expressly provides for such forfeiture. 3 Couch on Insurance, p. 2232; *Smith* v. *Mo. St. Life Ins. Co.,* (Kan.) 7 Pac. (2d) 65; *N. Y. Life Ins. Co.* v. *Alexander,* (Miss.) 85 So. 93, 15 A. L. R. 314, and note;

*Klein v. N. Y. Life Ins. Co.,* 104 U. S. 88, 26 L. Ed. 662; *Thompson v. Ins. Co.,* 104 U. S. 252, 26 L. Ed. 765.

So, clearly, had there been no "total disability" clause in the policy in suit the non-payment of the second premium would have terminated the rights of the insured under the policy. What effect, then, does the insertion of the "total disability" clause have on the situation? Let it be noted that this clause is not an assurance against disability. It is not ambiguous. Its only purpose is to relieve the insured of the burden of paying premiums while he is under disability, and not to place a monetary liability on the insurer. This clause is in effect a supplemental contract appended to and forming part of the principal contract. For an additional premium the insured thereby undertook a definite thing, and it only. The undertaking is that upon receipt of proof by the company, that, after payment of first annual premium, "and before default in payment of any subsequent premium, and while the policy is in force" and before the insured has reached the age of sixty-five, he has become totally and permanently disabled, the company will waive the payment of any subsequent premiums which mature during the continuance of the disability.

True, as contended by the plaintiff, no time is fixed within which the proof must be furnished. He says, therefore, that the furnishing of proof within a reasonable time is sufficient. We answer that such is not the contract. A reasonable time is an indefinite time, and indefiniteness is altogether out of keeping with the import of the undertaking. The disability clause must be read with the principal contract, which is definite and exact in its provision that the policy shall lapse upon failure to pay a premium within the period of grace allowed therefor. The supplemental contract does not render inoperative the said provision of the principal contract, it merely affords a means of avoiding its effect. Logically this can be done only before the lapse takes place. Proof of total disability must therefore be made while the policy is in force. The view that such proof may be furnished within a reasonable time after the policy has lapsed carries the idea of resuscitating a contract which under its very terms has become

a *nudum pactum*. Such is not the purpose of the disability clause. There is nothing in that clause to excuse the furnishing of proof of disability while the contract is in effect. If an insured becomes insane or disabled so that he cannot himself furnish proof of disability, that duty can be performed by some one for him but if no one knows about the policy there is presented an unfortunate situation attributable to the lack of precaution or the non-communicativeness of the insured. It is not a contingency insured against by the insurer.

There is another reason of primary importance why contractual provisions of this sort in life insurance policies must be interpreted in the light of the phraseology employed and not in the light of extraneous consideration. Life insurance has come to occupy a most important field and to discharge an indispensable function in modern society. The life insurance companies are enabled to function only on the basis of standard mortality and experience tables. These companies must comply with fixed requirements of state statutes. Neither the actuaries of the companies nor the insurance commissioners of the states could determine with any degree of definiteness the liability to which the companies might be subjected at any given date on account of outstanding insurance, if at the same time there are a large number of policies, supposedly lapsed and forfeited, under which there may be liability because of total disability of the insured at the time of the forfeiture, though the insurer had no notice of such disability.

"The annual premiums are an annuity, the present value of which is calculated to correspond with the present value of the amount assured, a reasonable percentage being added to the premiums to cover expenses and contingencies. The whole premiums are balanced against the whole insurance.

"But whilst this is true, it must be conceded that promptness of payment is essential in the business of life insurance. All the calculations of the insurance company are based on the hypothesis of prompt payments. They not only calculate on the receipt of the premiums when due, but on compounding interest upon them. It is on this basis that they are enabled

to offer assurance at the favorable rates they do. Forfeiture for non-payment is a necessary means of protecting themselves from embarrassment. Unless it were enforceable, the business would be thrown into utter confusion. It is like the forfeiture of shares in mining enterprises, and all other hazardous undertakings. There must be power to cut off unprofitable members, or the success of the whole scheme is endangered. The insured parties are associates in a great scheme. This associated relation exists whether the company be a mutual one or not. Each is interested in the engagements of all; for out of the coexistence of many risks arises the law of average, which underlies the whole business. An essential feature of this scheme is the mathematical calculations referred to, on which the premiums and amounts assured are based. And these calculations, again, are based on the assumption of average mortality, and of prompt payments and compound interest thereon. Delinquency cannot be tolerated nor redeemed, except at the option of the company.'' *Life Ins. Co.* v. *Statham,* 93 U. S. 24.

We are of opinion that, under the plain language of the policy in suit, proof of the disability was required to be furnished before the policy lapsed. This view is sustained by the holdings of many courts, whether the majority in number we are not prepared to say. But we do think that the line of reasoning followed in the cases of this group is basically sound. Among the cases thus holding are the following: *Bergholm* v. *Life Ins. Co.,* 284 U. S. 489, 76 L. Ed. 416; *Egan* v. *Life Ins. Co., supra; Dean* v. *Life Ins. Co.,* 165 S. E. (Ga.) 235; *Wick* v. *Life Ins. Co.,* 175 P. (Wash.) 953; *Courson* v. *Life Ins. Co.,* 295 Pa. 518, 145 A. 530; *Hanson* v. *Life Ins. Co.,* 229 Ill. App. 15; *Yohalem* v. *Life Ins. Co.,* 240 N. Y. Sup. 666; *Berry* v. *Life Ins. Co.,* 142 So. (Miss.) 445; *Life Ins. Co.* v. *Alexander,* 122 Miss. 813, 85 So. 93; and *Smith* v. *Life Ins. Co.,* 7 Pac. (2d) (Kan.) 65.

For the reasons stated we are of opinion to reverse the decree of the trial chancellor and to dismiss the bill.

*Reversed and rendered.*

KENNA, JUDGE, concurring:

By the terms of the policy, when a premium is due it must be paid or the policy contract lapses. This must be done rigidly within the time specified. Then the disability clause contracts to waive payment of premiums under certain conditions. Waive them when? Obviously, they must be paid or waived *when due,* else the policy is not kept alive. The company surely cannot be expected to keep the policy in effect unless the premium is paid or it is notified of disability so that it can waive the payment, when the premium is due. When neither occurs at the time the premium is payable, the policy lapses. Having lapsed, there is no provision by which it is re-instated when notice of disability is received thereafter. The premium cannot be waived after it has become due and has been defaulted. That would be to *waive the effect of non-payment* of premiums, whereas, the provision is to *waive payment.* This can be done prospectively only. To do this retrospectively is not to waive payment, but, in reality, is to waive the effect of non-payment. This is nowhere provided for in the policy.