REINGOLD et al. v. NEW YORK LIFE
INS. CO. et al.*
No. 8070.

Circuit Court of Appeals, Ninth Circuit.
Sept. 22, 1936.

*Rehearing denied Nov. 16, 1936.

Bischoff & Bischoff, of Portland, Or., for appellants.

Huntington, Wilson & Davis, of Portland, Or., for appellees.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant Harry Reingold, as guardian of appellant Rose Reingold, an insane person (hereinafter called the insured), and the insured, by her said guardian, brought this suit against appellees New York Life Insurance Company (hereinafter called the Company) and Ben Reingold. The complaint prayed for a decree adjudging and declaring that a certain insurance policy issued by the Company to the insured on, or as of, May 12, 1922, had not lapsed, as claimed by the Company, but was in full force and effect; that the insured was entitled to the disability benefits provided for in the policy, from and after May 1, 1931, on which date, it was alleged, she became totally disabled; that an assignment of the policy by the insured to appellee Ben Reingold, dated June 1, 1922, was void and of no effect; and that Ben Reingold had no right, title, or interest in or to the policy.

The suit was commenced in a state court of Oregon and, on the Company's petition, was removed to the District Court of the United States; it appearing from the petition that appellants are citizens of Oregon, that the Company is a citizen of New York, that there is a separable controversy between appellants and the Company, and that the matter in controversy, exclusive of interest and costs, exceeds $3,000.

Appellees filed separate answers. Ben Reingold's answer admitted all the allegations of the complaint and asked that a decree be entered as therein prayed for. The Company's answer prayed for a decree in its favor adjudging and declaring that the policy in question had lapsed for nonpayment of the premium due May 12, 1932, and had not been reinstated; that purported reinstatements thereof in June, 1932, and June, 1933, were void and of no effect, and should be canceled; that the only right remaining to appellants under the policy was the right to have continued, nonparticipating term insurance in the sum of $4,914 for the period ending October 2, 1943, after which the policy should have no value whatever; and that appellants be enjoined from commencing or prosecuting any suit to enforce any other right under the policy. The District Court, after hearing the case, entered a decree as prayed for by the Company; also adjudging and declaring that appellee Ben Reingold had no right, title or interest in or to the policy. This appeal followed.

The facts are not in dispute. Briefly summarized, they are as follows:

On May 23, 1922, the Company issued to the insured its policy No. 8,201,717, effective May 12, 1922, in the face amount of

$5,000, payable to the insured's executors, administrators, or assigns, or to her duly designated beneficiary. No beneficiary was ever designated. The policy was issued pursuant to the insured's written application, a copy of which was attached to and made a part of the policy. The insured was at that time 29 years of age. She was and is a resident of Oregon. Her application was executed in Oregon, and the policy was delivered to her in that state.

The policy was issued, and the contract evidenced thereby was made, in consideration of a premium of $132 theretofore paid and a like premium to be paid annually thereafter, on the anniversary of the policy, during the life of the insured. This premium included an annual premium of $5 for double indemnity benefits, not here involved, and $8.30 for disability benefits. The Company, in and by the policy, agreed to pay to the insured 1 per cent. of the face of the policy ($10 per $1,000) each month during her lifetime and to waive the payment of premiums, if the insured became wholly and permanently disabled before the age of 60, subject to all the terms and conditions contained in section 1 of the policy. Section 1 provides:

"1. Disability Benefits shall be effective upon receipt at the Company's Home Office, before default in the payment of premium of due proof that the Insured became totally and permanently disabled after he received this Policy and before its anniversary on which the Insured's age at nearest birthday is sixty years. Disability shall be deemed to be total whenever the Insured becomes wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit, and under this contract disability shall be presumed to be permanent after the Insured has been continuously so disabled for not less than three months. * * *

"2. Income Payments.—The Company will pay the Insured, or if such disability results from insanity will pay the beneficiary in lieu of the Insured, a monthly income of. one per cent. of the face of the Policy during the lifetime of the Insured and the continuance of such disability. The first income payment shall become due on the first day of the calendar month following receipt of proof of total and permanent disability or proof of continuous total disability for three consecutive months, as above, and succeeding payments shall be-

come due on the first day of each calendar month thereafter. Any income payments becoming due before the Company approves the proof of disability shall become payable upon such approval, and subsequent payments will be made as they become due.

"3. Waiver of Premiums.—The Company will waive payment of any premium falling due after approval of such proof of disability and during such disability. Any premium due prior to such approval is payable in accordance with the terms of the Policy, but if due after receipt of said proof will, if paid, be refunded upon approval of such proof."

Section 2 of the policy provides that the proportion of the Company's divisible surplus accruing thereon shall be ascertained annually; that, beginning at the end of the second insurance year, and on each anniversary thereafter, the surplus apportioned to this policy shall, at the option of the insured, be (a) paid in cash, or (b) applied toward payment of premiums, or (c) applied to purchase a paid-up addition to the sum insured, or (d) left to accumulate at interest and be withdrawable in cash by the insured on any anniversary of the policy; and that, if the insured fails to notify the Company in writing, within three months after the Company has mailed her a written notice of the amount of such dividend and the options available as aforesaid, which option she selects, the Company will apply such dividend to the purchase of a paid-up addition to the sum insured.

In her application, attached to and made a part of the policy, the insured directed that dividends apportioned thereto should be left to accumulate at interest, subject to her order. She thereby selected, and notified the Company that she had selected, option (d) aforesaid. She never gave the Company any other or different notice.

Section 3 of the policy provides that, after three full years' premiums have been paid, and before default in the payment of any premium, the Company will lend to the insured, on the sole security of the policy, any sum desired, provided her total indebtedness to the Company shall never exceed the sum which, with 6 per cent. interest to the end of the then current insurance year, shall equal the cash surrender value of the policy, interest on such loan, at 6

per cent. being payable annually on the anniversary of the policy.

Section 4 of the policy provides:

"After three full years' premiums have been paid, the Insured may, at the end of any insurance year or within three months after any default in payment of premium but not later, surrender the Policy, and

"(1) Receive its Cash Surrender Value; or

"(2) Receive the amount of non-participating paid-up insurance which the cash surrender value at date of default less any indebtedness hereon will purchase, payable at the same time and on the same conditions as this Policy, but without disability or double indemnity benefits. . . .

"(3) If the Policy be not surrendered for cash or for paid-up insurance within three months after default in payment of premium, its cash surrender value at date of default, less the amount of any indebtedness, shall automatically purchase Continued Insurance from the date of default for the face of the Policy plus any dividend additions and less any indebtedness to the Company. The Continued Insurance shall be without future participation and without the right to loans, cash surrender values, disability or double indemnity benefits."

Section 4 then states what the cash surrender value of the policy shall consist of, and how, at the end of each year, the cash surrender value, the amount of paid-up insurance it will purchase, and the term for which it will purchase continued insurance, shall be computed. To illustrate this, a table of surrender values is printed in the policy.

Section 6 of the policy provides: "If any premium is not paid on or before the day it falls due the policy-holder is in default; but a grace of one month (not less than thirty days) . . . will be allowed for the payment of every premium after the first, during which time the insurance continues in force. . . . All premiums are payable on or before their due date, . . . At any time within five years after any default, upon written application by the Insured and upon presentation at the Home Office of evidence of insurability satisfactory to the Company, this Policy may be reinstated together with any indebtedness in accordance with the loan provisions of the Policy, upon payment of loan interest, and of arrears of premiums with five per cent. thereon from their due date."

On June 1, 1922, the insured, by a written assignment executed in duplicate, assigned the policy and all her rights thereunder to appellee Ben Reingold. An executed copy of the assignment was delivered to and retained by the Company. The assignment, on its face, was absolute, and the Company had no knowledge or notice to the contrary until after this suit was commenced. Actually, the assignment was made to secure an indebtedness owing by the insured to Ben Reingold. This indebtedness was paid and, as between himself and the insured, Ben Reingold relinquished his interest in the policy prior to April 1, 1931, but the Company had no knowledge or notice of such relinquishment until Ben Reingold filed his answer in this case.

Prior to April 1, 1931, the insured became insane and, by reason thereof, totally and permanently disabled, within the meaning of the policy. She was under the care and treatment of physicians from April 1, 1931, until November 15, 1932, when, by order of the proper state court, she was committed to the Oregon State Hospital for the Insane. There she remained until June 1, 1933, when she was temporarily paroled to the custody of appellee Ben Reingold. She was in his custody until June 16, 1934, when she was returned to the State Hospital, where she has ever since remained. The Company had no knowledge or notice of the insured's insanity or of her consequent disability until September 26, 1933.

The premium due May 12, 1932, was not paid on or prior to that date nor within the grace period of one month thereafter. On June 24, 1932, the insured and appellee Ben Reingold presented to the Company a written application, signed by the insured, for reinstatement of the policy and, at the same time, applied for a loan on the policy and, to secure such loan, delivered to the Company a policy loan agreement signed by the insured and by Ben Reingold as assignee of the policy. The Company approved the application for reinstatement and made the requested loan. From the proceeds of this loan the insured and Ben Reingold paid the premium due May 12, 1932, with interest, a total of $132.98, and the policy was thereupon reinstated on the Company's records.

The premium due May 12, 1933, was never paid. On June 26, 1933, the insured and appellee Ben Reingold presented to the Company a written application, signed by the insured, for reinstatement of the policy. They did not then pay or offer to pay

the premium due May 12, 1933, but requested an extension of time for making such payment. To secure such extension, Ben Reingold deposited with the Company $25 in cash, plus 20 cents interest, together with his promissory note for $107 payable September 12, 1933, with 5 per cent. interest from May 12, 1933. The note contained these provisions:

"This note, together with Twenty-five and No/100 Dollars in cash is deposited with said Company not as payment of premium either in whole or in part, but upon the following special agreement:

"First.—That the above numbered policy has lapsed for the non-payment of premium due on May 12, 1933 and application is being made for its reinstatement; That evidence of insurability satisfactory to the Company and payment of all defaulted premiums with interest are conditions precedent to the reinstatement which cannot be waived; That if, however, the Company finds the evidence of insurability satisfactory, then, although the policy shall not be reinstated until the full payment required for reinstatement is made, (1), the insurance called for by the policy shall be in force from the date of such finding until midnight of the due date of this note; and (2) if this note is paid on or before the date it will then be accepted by said Company as payment of said premium with interest, and thereupon and thereby said policy and all benefits thereunder shall be reinstated; but (3) if this note is not paid on or before the date it becomes due, it shall thereupon automatically cease to be a claim against the maker, and said Company shall retain said cash as part compensation for the rights and privileges hereby granted, and thereafter all rights under said policy shall be the same as if said cash had not been paid nor said application for reinstatement made.

"Second.—That if the evidence of insurability is not satisfactory, this note shall be void and of no effect, and the Company will, upon demand and surrender of the receipt given therefor, return said cash."

The Company accepted this deposit and, subject to the special agreement just mentioned, approved the application for reinstatement last referred to.

In each of the aforesaid applications for reinstatement, it was stated that the insured was, to the best of her knowledge and belief, in the same condition of health as when the policy was issued, and that, within the two years next preceding the date of such application, she had not had any illnesses, diseases, or bodily injuries, and had not consulted or been treated by any physician or physicians. These statements, made for the purpose of inducing the Company to reinstate the policy, were false and untrue, and were known by the insured and Ben Reingold to be false and untrue. The insured was, at the time of making each application, in greatly impaired health and, during each of said two-year periods, had had various illnesses and diseases and had been treated by numerous physicians, all of which she and Ben Reingold well knew. The Company, having no knowledge of their falsity, believed and relied on these statements. Had it known they were false, it would not have reinstated the policy, would not have made the loan and would not have accepted the deposit above referred to.

Ben Reingold's note was never paid. On September 26, 1933, he notified the Company that the insured was then and had been since April, 1931, totally disabled and mentally incompetent, and requested the Company to send him forms for making claim for disability benefits. The Company thereupon investigated and, for the first time, learned the facts regarding the insured's mental and physical condition, and that the statements contained in the applications for reinstatement of the policy were false. Having learned these facts, the Company, on December 27, 1933, elected to rescind and did rescind all reinstatements of the policy, and notified the insured and Ben Reingold that it had done so, and that the policy had lapsed as of May 12, 1932.

In order to restore the status quo between the Company and the insured as of May 12, 1932, the Company deducted from the amount borrowed by the insured from the Company the amount paid by the insured to the Company from the proceeds of that loan, thus reducing the insured's indebtedness to $467.02. An indorsement to that effect was placed on the loan agreement, and copies thereof were sent to the insured and Ben Reingold. The Company also canceled Ben Reingold's note and tendered back the $25.20 theretofore deposited with the Company, with 6 per cent. interest, being a total of $26.08, which sum (said tender having been refused) the Company thereafter paid into the registry of the District Court.

Dividend additions to the policy on May 12, 1932, amounted to $380.34. Its cash surrender value on that date was $575, plus the dividend additions, less the insured's indebtedness to the Company, the net cash surrender value being $488.32. As the policy was not surrendered for cash or for paid-up insurance within three months after default, the Company applied its cash surrender value to the purchase of continued insurance from the date of default, for the face of the policy, plus the dividend additions, less the insured's indebtedness to the Company, the amount of continued insurance so purchased being $4,914. The cash surrender value of the policy was sufficient to purchase this amount of continued insurance for the term of 11 years and 143 days from May 12, 1932; that is to say, until October 2, 1943. The Company so notified the insured and Ben Reingold on December 27, 1933.

█ Appellants thereupon commenced this suit and, from the decree therein, have brought this appeal. They contend that the policy has never lapsed, because, they say, there has been no default in the payment of any premium. They admit that the premiums due May 12, 1932, and May 12, 1933, were not paid on or before their due date, nor within the grace period provided in the policy, but they contend that nonpayment of those premiums did not constitute default, because, they say, when the insured became totally and permanently disabled, as she did in 1931, she was, by the terms of the policy, relieved from any obligation to pay further premiums.

The policy does not so provide. It states that the Company agrees to waive the payment of premiums, if the insured becomes wholly and permanently disabled before the age of 60, subject to all the terms and conditions contained in section 1 of the policy. Section 1 provides that disability benefits shall be effective upon receipt, at the Company's home office, before default in the payment of any premium, of due proof that the insured became totally and permanently disabled after she received the policy and before its anniversary on which her age at her nearest birthday is 60 years; that the Company will waive payment of any premium falling due after approval of such proof of disability and during such disability; and that any premium due prior to such approval is payable in accordance with the terms of the policy, but, if due after receipt of such proof, will, if paid, be refunded upon approval of such proof.

Thus the obligation to waive payment of premiums was conditioned upon receipt by the Company, at its home office, before default in the payment of any premium, of due proof of the insured's disability, and approval thereof by the Company before such default. This was a condition precedent. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 491, 52 S.Ct. 230, 76 L.Ed. 416; Massachusetts Mutual Life Ins. Co. v. Mayo (C.C.A.9) 81 F.(2d) 661, 662; Chambers v. Franklin Life Ins. Co. (C.C.A.5) 80 F.(2d) 339, 340; Fauer v. Aetna Life Ins. Co. (C.C.A.2) 70 F.(2d) 693, 695; Egan v. New York Life Ins. Co. (C.C.A.5) 67 F.(2d) 899, 900; Avery v. New York Life Ins. Co. (C.C.A.5) 67 F.(2d) 442; Orr v. Mutual Life Ins. Co. (C.C.A.8) 64 F.(2d) 561, 562; Pilot Life Ins. Co. v. Owen (C.C.A.4) 31 F.(2d) 862, 865.

The Company never received, at its home office or elsewhere, any proof of the insured's disability, and never had any knowledge or notice thereof until September 26, 1933. There has, of course, been no approval of any such proof. Prior to September 26, 1933, two premiums had fallen due—May 12, 1932, and May 12, 1933—and had not been paid on or before their due date. The policy provides that all premiums are payable on or before their due date, and that, if any premium is not paid on or before the day it falls due, the policyholder is in default. The insured, therefore, was twice in default in the payment of premiums before the Company received any proof or had any knowledge or notice of her disability. Hence, by the terms of the policy, the Company's obligation to waive payment of premiums never became effective.

Appellants contend that, although there was no proof of disability and, therefore, no compliance with the condition upon which the payment of premiums was to be waived, such noncompliance was excused by the fact that the insured, being insane, was unable to make the required proof. This contention cannot prevail. The condition upon which the Company agreed to waive the payment of premiums was not that proof of disability should be made by the insured, but that such proof should be received and approved by the Company before default in the payment of any premium. Whether such proof was made by the insured or by some one else was immaterial. As was said of a similar policy in Egan v. New York Life Ins. Co., supra: "The policy is plain and unambiguous. The contract

clearly contemplates that, if for any reason the insured is unable to promptly make proof of his disability warranting the suspension of premiums and the payment of the annual [in this case, monthly] installments, some one else in interest must do so for him. This is a condition precedent necessary to be complied with to fix liability under the policy. It is very material to the risk that proof of total disability be furnished promptly and while the policy is kept in force by the payment of premiums. The provisions of the policy so requiring are not to be considered waived or rendered inoperative simply because of misfortune overtaking the insured."

Here, the insured had two brothers— appellant Harry Reingold and appellee Ben Reingold—either one of whom might have made proof of her disability. Ben Reingold was not only a brother of the insured, but was also the assignee of the policy and, so far as the Company knew, was the sole owner thereof and the sole beneficiary thereunder. Moreover, even though the insured had had no relatives and had not assigned the policy, that fact would not authorize us to disregard the condition upon which the Company agreed to waive payment of premiums, or to substitute therefor some other or different condition. We cannot rewrite the contract which the parties made, merely because, as it now turns out, one party would have been better off had they made a different contract.

In Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 155, 79 L.Ed. 398, cited by appellants, the insurer had agreed to waive the payment of premiums "if before attaining the age of sixty years, and while no premium on the policy is in default, the insured shall furnish to the company due proof that he is totally and permanently disabled." Thus, in that case, the agreement to waive payment of premiums was conditioned upon proof being furnished by the insured himself. In the case at bar, there was no such condition. Furthermore, in the Johnson Case, there was no assignment of the policy and, therefore, no assignee who might have made proof of the insured's disability. The Johnson policy

having been delivered in Virginia to a resident of Virginia, the Supreme Court held that it should be interpreted according to the law of Virginia, and that, under the law of Virginia, as declared in Swann v. Atlantic Life Ins. Co., 156 Va. 852, 159 S.E. 192,[1] the insured's nonperformance of the condition contained in the policy was excused by the fact that he had become mentally incompetent. The Supreme Court said: "In this situation we are not under a duty to make a choice for ourselves between alternative constructions as if the courts of the place of the contract were silent or uncertain. Without suggesting an independent preference either one way or the other, we yield to the judges of Virginia expounding a Virginia policy and adjudging its effect. . . . No question is here as to any general principle of the law of contracts of insurance . . ., with consequences broader than those involved in the construction of a highly specialized condition. All that is here for our decision is the meaning, the tacit implications, of a particular set of words, which as experience has shown, may yield a different answer to this reader and to that one. With choice so 'balanced with doubt,' we accept as our guide the law declared by the state where the contract had its being."

The policy here involved was delivered in Oregon to a resident of Oregon and should be interpreted according to the law of Oregon. That state, however, does not appear to have "declared" what its law is on this subject. It has not been shown to have adopted the Virginia rule which the Supreme Court followed in the Johnson Case. Even assuming its adoption, that rule is inapplicable to this case, because, as we have seen the condition precedent contained in the present policy differs radically from that contained in the Johnson policy. The Johnson Case, therefore, is not in point here. Having no state statute or state court decision[2] to guide us, we determine for ourselves the rule of construction to be applied in this case. The correct rule, we think, is that which the Circuit Court of Appeals for the Fifth Circuit applied in Egan v. New York Life Ins. Co. and Cham-

---

[1] In the Swann Case, the insurer had agreed to waive payment of premiums "if, prior to attaining the rated age of sixty years, while this Contract is in full force . . . the Insured shall furnish proof satisfactory to the Company that . . . he has become totally and permanently disabled."

[2] The Oregon cases cited by appellants [Stinchcombe v. New York Life Ins. Co., 46 Or. 316, 80 P. 213, and Hoffman v. Employer's Liability Assurance Corp., 146 Or. 66, 29 P.(2d) 557] do not involve, discuss, deal with, or throw any light on the question we are considering.

bers v. Franklin Life Ins. Co., supra. See, also, Reynolds v. Travelers' Ins. Co., 176 Wash. 36, 28 P.(2d) 310; Iannarelli v. Kansas City Life Ins. Co., 114 W.Va. 88, 171 S.E. 748.

◼ Appellants contend that, to prevent a lapse, the Company should have applied the cash surrender value of the policy to the payment of premiums falling due thereon. The cash surrender value of the policy included dividends standing to the credit thereof. By the terms of the policy, the insured was entitled to have such dividends (a) paid in cash, or (b) applied to the payment of premiums, or (c) applied to purchase paid-up additions to the sum insured, or (d) left to accumulate at interest. In her application, attached to and made a part of the policy, she selected option (d) and directed that her dividends be left to accumulate at interest. This direction was complied with. The insured never directed or authorized the Company to apply her dividends or any part of them to the payment of premiums.

The cash surrender value of the policy included its loan value. By the terms of the policy, the insured was entitled to borrow, and the Company was required to lend to the insured, at her request, the whole or any part of the loan value of the policy. Such a loan was, in fact, applied for and obtained in June, 1932. The policy did not authorize or direct the Company to apply the loan value of the policy or any part of it to the payment of premiums, nor did the insured, at any time, give any such direction or authorization.

By the terms of the policy, the insured was entitled, upon surrender thereof, or default in the payment of any premium thereon, (1) to receive the cash surrender value of the policy, or (2) to receive the amount of nonparticipating paid-up insurance which such cash surrender value, less any indebtedness to the Company, would purchase. If the insured failed, as she did fail, to exercise option (1) or option (2) within three months after such default, the Company was required to, and did, apply the cash surrender value of the policy, less the insured's indebtedness, to the purchase of continued nonparticipating term insurance. The Company was not authorized, much less required, to make any other application, disposition or use of the cash surrender value of the policy. It, therefore, had no right to apply such cash surrender value or any part of it to the payment of premiums. Williams v. Union Central

Life Ins. Co., 291 U.S. 170, 180, 54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693; First National Bank v. State Life Ins. Co. (C.C. A.5) 80 F.(2d) 499, 501; Silverman v. New York Life Ins. Co. (C.C.A.3) 66 F. (2d) 554, 555; Walters v. Mutual Life Ins. Co. (C.C.A.4) 64 F.(2d) 178, 181; Pilot Life Ins. Co. v. Owen, supra.

◼ Notwithstanding the admitted falsity of the statements by which the insured and Ben Reingold induced the Company to reinstate the policy, appellants contend that the trial court erred in cancelling the reinstatements and declaring them void. In support of this contention, appellants cite a provision of the policy that: "All statements made by the Insured shall, in absence of fraud, be deemed representations and not warranties, and no such statement shall avoid the Policy or be used in defense to a claim under it, unless it be contained in the written application and a copy of the application is endorsed upon or attached to this Policy when issued." It is thereupon argued that, since the false statements upon which the policy was reinstated were not contained in the application attached to the policy when issued, they could not be used by the Company in its defense.

There is no merit in this contention. The cited provision refers to statements made before the policy was issued, not to those made for the purpose of procuring a reinstatement of the policy after a lapse. Holden v. Metropolitan Life Ins. Co., 188 Mass. 212, 74 N.E. 337; New York Life Ins. Co. v. Buchberg, 249 Mich. 317, 228 N.W. 770, 67 A.L.R. 1483; Linder v. Metropolitan Life Ins. Co., 148 Tenn. 236, 255 S.W. 43.

◼ Appellants contend that, being insane, the insured could not be charged with knowledge of the falsity of her statements, or be deemed guilty of having thereby committed a fraud. Thus it is contended that, while the insured may obtain equitable relief, the Company, which, without notice of her insanity, relied upon her false statements, can obtain no relief. We agree with the Texas Court of Civil Appeals that "such doctrine is monstrous and utterly untenable." Rattner v. Kleiman, 36 S.W. (2d) 249, 251. Furthermore, the trial court found—and appellants do not question the finding—that the insured, though she had theretofore become insane, knew that the statements made in her applications for reinstatement were false. Thus, in effect,

it was found that her false statements were made during lucid intervals. If so, she was guilty of fraud. Compare Sleicher v. Sleicher, 251 N.Y. 366, 167 N.E. 501.

■ It must also be remembered that the applications for reinstatement, though signed by the insured alone, were presented to the Company by appellee Ben Reingold, assignee of the policy and, so far as the Company knew, sole owner thereof and sole beneficiary thereunder. It is not claimed that Ben Reingold was insane. It is conceded by appellants and by Ben Reingold himself that the statements which he presented to the Company were known by him to be false. In presenting such statements, Ben Reingold perpetrated a fraud, either for his own benefit or for the benefit of the insured. To protect the beneficiary and deny relief to the victim of this fraud would be grossly inequitable.

Decree affirmed.

HANEY, Circuit Judge (dissenting).

Insured, at the time of her default in payment of premiums on May 23, 1931, and prior thereto, was totally and permanently disabled by reason of insanity. From that time she was, and is now, wholly incapable of making proof of her disability. Proof of disability was not made until after default in payment of premiums.

The policy lapsed, and recovery cannot be had, unless (1) the liability of the appellee is fixed by the occurrence of the disability and not by the proof; or (2) insanity excuses performance of the condition requiring proof of disability.

1. Whether liability for disability benefits and waiver of premiums is fixed by the occurrence of the disability, or is fixed by the receipt of proof of disability by the company, is dependent upon the exact language of the policy. The cases, cited by the majority as authority for the holding that the provisions before us make liability arise only upon receipt of proof, all consider provisions which differ from those before us, and are therefore not in point. I believe, however, that no liability arises under the provisions before us, until the insurer receives due proof of the insured's total and permanent disability (1) "before default in the payment of premium," and (2) "after he received" the policy, and (3) "before its anniversary on which the Insured's age at nearest birthday is sixty years."

2. In the federal courts when the question arises, as to whether or not insanity excuses the condition requiring proof of disability, the rule to be applied is the rule of the state where the policy was delivered. Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398.

As disclosed by the cases, there are two classes of provisions commonly found in policies. Those in the first class require the insured to submit proof of disability and those in the second class require proof of disability to be submitted, but do not specify who is to submit the proof.

In Kentucky,[1] North Carolina,[2] South Carolina,[3] Texas,[4] and Virginia,[5] it is held that insanity of the insured excuses the condition requiring submission of proof of disability by the insured. On the other hand, Alabama,[6] Georgia,[7] Illinois,[8] Kansas,[9] Tennessee,[10] and Washington,[11] have held that insanity does not excuse the performance of the condition, and in addition to the states named, the Circuit Court of Appeals for the Fifth Circuit[12] and New

---

[1] Southern Life Ins. Co. v. Hazard, 148 Ky. 465, 146 S.W. 1107.

[2] Nelson v. Jefferson Standard Life Ins. Co., 199 N.C. 443, 154 S.E. 752; Rhyne v. Jefferson Standard Life Ins. Co., 196 N. C. 717, 147 S.E. 6; Id., 199 N.C. 419, 154 S.E. 749.

[3] Caldwell v. Volunteer State Life Ins. Co., 170 S.C. 294, 170 S.E. 349.

[4] Pan-American Life Ins. Co. v. Welch (Tex.Civ.App.) 74 S.W.(2d) 408; Mid-Continent Life Ins. Co. v. Hubbard (Tex. Civ.App.) 32 S.W.(2d) 701.

[5] Swann v. Atlantic Life Ins. Co., 156 Va. 852, 159 S.E. 192.

[6] Kimsey v. Jefferson Standard Life Ins. Co., 230 Ala. 550, 161 So. 796; McCutchen v. All States Life Ins. Co., 229 Ala. 616, 158 So. 729; New England Mut. Life Ins. Co. v. Reynolds, 217 Ala. 307, 116 So. 151, 59 A.L.R. 1075.

[7] Dean v. Northwestern Mut. Life Ins. Co., 175 Ga. 321, 165 S.E. 235; compare North American Accident Ins. Co. v. Watson, 6 Ga.App. 193, 64 S.E. 693.

[8] Hanson v. Northwestern Mut. Life Ins. Co., 229 Ill.App. 15.

[9] Smith v. Missouri State Life Ins. Co., 134 Kan. 426, 7 P.(2d) 65.

[10] Hall v. Acacia Mut. Life Ass'n, 164 Tenn. 93, 46 S.W.(2d) 56; compare Bank of Commerce & T. Co. v. Northwestern Nat. L. Ins. Co., 160 Tenn. 551, 26 S.W. (2d) 135, 68 A.L.R. 1380.

[11] Kearns v. Penn Mut. Life Ins. Co., 178 Wash. 235, 34 P.(2d) 888.

[12] Chambers v. Franklin Life Ins. Co. (C.C.A.5) 80 F.(2d) 339, 341.

Jersey[13] have indicated their support in dicta.

With regard to provisions in the second class, where it is not specified who is to submit the proof of disability, in Arkansas,[14] Iowa,[15] Kentucky,[16] Nebraska,[17] North Carolina,[18] South Carolina,[19] and Texas,[20] it is held that insanity of the insured excuses the performance of the condition. In addition, Connecticut[21] supports this rule in dicta. On the other hand, the Circuit Court of Appeals for the Fifth Circuit,[22] Alabama,[23] Georgia,[24] Mississippi,[25] Tennessee,[26] Washington,[27] and West Virginia,[28] have held to the contrary, and are supported by dicta in New York.[29]

In collecting these authorities, those involving health and accident policies have not been included, although the rule is apparently thought applicable by the Supreme Court in Mutual Life Ins. Co. v. Johnson, supra, 293 U.S. 335, 338, 55 S.Ct. 154, 79 L.Ed. 398. However, my examination discloses that in some of the states a different rule is invoked in life insurance policies than is invoked with regard to notice of disability in health and accident policies.

Some of the cases regarding health and accident policies may be found in an annotation, 54 A.L.R. 600, 611.

The cases[30] excusing proof of loss as required by fire insurance policies because of insanity of the assured, were thought not applicable in Mutual Life Ins. Co. v. Johnson, supra.

The majority apparently make a distinction between the two classes of provisions. I have been unable to find a single authority making such a distinction. The cases are cited and quoted from indiscriminately. However, even if such distinction is made, the authorities are evenly balanced as to the correct rule.

In Mutual Life Ins. Co. v. Johnson, supra, it appears that whatever rule is applied, it is a construction of the contract by the court. Since Oregon has not yet decided the point, I believe we must adopt the construction which is most favorable to the insured. Stipcich v. Metropolitan Life Insurance Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895. Such a construction requires us to hold for appellant herein, and I therefore dissent.

---

[13] Goldman v. New York Life Ins. Co., 115 N.J.Eq. 535, 171 A. 541.

[14] Equitable Life Assur. Soc. v. Felton, 189 Ark. 318, 71 S.W.(2d) 1049; Missouri State Life Ins. Co. v. Case, 189 Ark. 223, 71 S.W.(2d) 199; Missouri State Life Ins. Co. v. Holt, 186 Ark. 672, 55 S.W.(2d) 788; Old Colony Life Ins. Co. v. Julian, 175 Ark. 359, 299 S.W. 366; Pfeiffer v. Missouri State Life Ins. Co., 174 Ark. 783, 297 S.W. 847, 54 A.L.R. 600.

[15] McCoy v. New York Life Ins. Co., 219 Iowa, 514, 258 N.W. 320.

[16] Northwestern Mut. Life Ins. Co. v. Carneal, 262 Ky. 665, 90 S.W.(2d) 1010; Fidelity Mut. Life Ins. Co. v. Gardner's Adm'r, 233 Ky. 88, 25 S.W.(2d) 69; Metropolitan Life Ins. Co. v. Carroll, 209 Ky. 522, 273 S.W. 54.

[17] Marti v. Midwest Life Ins. Co., 108 Neb. 845, 189 N.W. 388, 29 A.L.R. 1507.

[18] Rand v. Home Ins. Co., 206 N.C. 760, 174 S.E. 749.

[19] Levan v. Metropolitan Life Ins. Co., 138 S.C. 253, 136 S.E. 304.

[20] State Life Ins. Co. v. Barnes (Tex. Civ.App.) 58 S.W.(2d) 189; Missouri State Life Ins. Co. v. Le Fevre (Tex. Civ.App.) 10 S.W.(2d) 267; State Life Ins. Co. v. Fann (Tex.Civ.App.) 269 S. W. 1111; Merchants' Life Ins. Co. v. Clark (Tex.Civ.App.) 256 S.W. 969.

[21] Porto v. Metropolitan Life Ins. Co., 120 Conn. 196, 180 A. 289, 291.

[22] Egan v. New York Life Ins. Co. (C. C.A. 5) 67 F.(2d) 899.

[23] Burchfield v. Ætna Life Ins. Co., 230 Ala. 49, 159 So. 235.

[24] Smith v. Travelers' Ins. Co., 177 Ga. 589, 171 S.E. 121; compare Life Ins. Co. of Virginia v. Williams, 48 Ga.App. 10, 172 S.E. 101.

[25] Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445, 145 So. 887; New York Life Ins. Co. v. Alexander, 122 Miss. 813, 85 So. 93, 15 A.L.R. 314.

[26] Pacific Mut. Life Ins. Co. v. Hobbs, 168 Tenn. 690, 80 S.W.(2d) 662.

[27] Reynolds v. Travelers' Ins. Co., 176 Wash. 36, 28 P.(2d) 310.

[28] DaCorte v. New York Life Ins. Co., 114 W.Va. 172, 171 S.E. 248; Iannarelli v. Kansas City Life Ins. Co., 114 W.Va. 88, 171 S.E. 748.

[29] Mutchnick v. John Hancock Mut. Life Ins. Co., 157 Misc. 598, 284 N.Y.S. 565, 573.

[30] Insurance Companies v. Boykin (Germania F. Ins. Co. v. Boykin), 12 Wall.(79 U.S.) 433, 20 L.Ed. 442; Hartford Fire Ins. Co. v. Doll (C.C.A. 7) 23 F.(2d) 443, 56 A.L.R. 1059; Valisano v. Continental Ins. Co., 254 Mich. 122, 235 N.W. 868; Houseman v. Home Ins. Co., 78 W.Va. 203, 88 S.E. 1048, L.R.A. 1917A, 299.