BRENT RHYNE, GUARDIAN OF R. H. RHYNE, v. JEFFERSON STANDARD LIFE INSURANCE COMPANY.

(Filed 17 September, 1930.)

**Insurance J c—Failure to give immediate notice of disability will not work forfeiture where insured is incapable of giving such notice.**

Where a clause in a policy of life insurance provides for a waiver of premiums and the payment to the insured of a certain amount of money monthly in case of permanent and total disability upon due notice and proof of such disability to be given the insurer before the time for the payment of the next premium after the beginning of the disability, failure to give such notice within the time specified will not work a forfeiture if the insured is under such disability as to incapacitate him from giving such notice, and his failure is not attributable to any fault of his, *Rhyne v. Insurance Co.,* 196 N. C., 717, cited and applied as the law of the case.

CIVIL ACTION, before *Lyon, Emergency Judge,* at July Term, 1929, of BURKE.

The facts necessary to an understanding of the principles of law involved are set forth in the former appeal reported in 196 N. C., 717.

The following issues were submitted to the jury:

1. "Did R. H. Rhyne, on or about 1 February, 1927, become wholly and continuously disabled from bodily injuries or disease whereby he was and will be permanently, continuously and wholly prevented thereby from pursuing any occupation whatsoever for remuneration or profit? If so, when?"

2. "If so, did he file or cause to be filed with the defendant due proof of such disability after the payment of the first premium and before default in the payment of any subsequent premium on each of the policies in controversy?"

3. "If he did not file such proofs, was the said R. H. Rhyne, on 20 February, 1927, and for thirty days thereafter, so insane as to be incapable of knowing that he had insurance policy number 267701 issued by the defendant, that he was required to pay a premium thereon on said date or within thirty days thereafter, and that he was totally and permanently disabled, and that he was required by the terms of said policy to furnish the defendant due proof of such disability prior to default in the payment of any premium on said policy?"

4. "If he did not file such proofs was R. H. Rhyne, on 15 June, 1927, and for thirty days thereafter so insane as to be incapable of knowing that he had insurance policy No. 288280, issued by the defendant, that he was required to pay a premium thereon on said date or within thirty days thereafter, and that he was totally and permanently disabled and that he was required by the terms of said policy to furnish the defendant due proof of such disability prior to default in the payment of any premium on said policy?"

5. "What sum, if any, is the plaintiff entitled to recover of the defendant upon the cause of action set forth in the complaint?"

The jury answered the first issue "Yes, 1 February, 1927"; the second issue "No"; the third issue "Yes"; the fourth issue "Yes," and the fifth issue "$75.00 per month from 1 February, 1927, to 4 January, 1928."

From judgment upon the verdict the defendant appealed.

*John M. Mull and Avery & Patton for plaintiff.*
*Brooks, Parker, Smith & Wharton and Ervin & Ervin for defendant.*

BROGDEN, J. The former appeal in this case, reported in 196 N. C., at page 717, contained the following declaration: "There was evidence from which the jury could find that the assured became insane in January or February, 1927, during the life of the policies in suit." The evidence for the plaintiff in the present case is substantially the same as that introduced at the former trial and referred to in the former appeal. Hence, unless the Court shall overrule the former decision in this case, the principle of "Law of the case" would apply to this appeal and thus determine the merits of the controversy.

The question then, is, was the former appeal correctly decided?

It is conceded that the decisions upon the proposition as to how far the insanity of the insured will excuse failure to furnish proof of dis-

ability, are not uniform and have been built upon divergent theories of liability, thus working out variable conclusions of law. One of the first cases dealing with the subject was *Fire Insurance Co. v. Boykin,* 79 U. S., 349, 20 Law Ed., 442. In that case an insane man furnished proof of loss by affidavit to a fire insurance company to the effect "that he believed the building had been set on fire by an incendiary; that he had heard of repeated threats of a person whom he named that he would burn the premises, and that it was in consequence of these threats that he had procured the insurance which he was then seeking to recover." When this affidavit was received by the insurance companies they refused to pay and notified the insured that they considered the policy void. The contention was made that the insured was insane when he wrote the affidavit. The Court said: "If he were so insane as to be incapable of making an intelligent statement, this would, of itself, excuse that condition of the policy." The *Boykin case* is cited with approval in *Hirsch-Fauth Furniture Co. v. Continental Ins. Co.,* 24 Fed. (2d), 216. The Court said: "In reply to the suggestion that the insured who, being insane, failed to file proof of loss within the time limit stated in the policy, could not recover, it was said that such a proposition is too repugnant to justice and humanity to merit serious consideration." The *Boykin case* was also cited with approval in *Hartford Fire Ins. Co. v. Doll,* 23 Fed. (2d), 443. In that case the insurance policy provided: "If fire occur the insured shall within six days give notice of any loss thereby in writing to this company." The insured was injured in a tornado, was unconscious for some days, blind for several weeks and confined in a hospital. It is to be noted that the foregoing cases involve liability for failure to give notice of destruction of property by fire.

The Supreme Court of Michigan considered the question in *Reed v. Loyal Protective Asso.,* 117 N. W., 600. The notice clause was as follows: "Unless notice of any injury or of the beginning of any sickness is received in writing at the home office of this association in Boston, Massachusetts, on or before the expiration of fourteen days from the commencement of such disability, . . . the claim shall be valid only for the period dating from the actual time the notification is received at the home office." The insured was injured by a fall in October and the notice was not filed until 1 December. The insurance company contended: (1) That the contract is an unconditional agreement as to notice, and not subject to a construction, which does violence to its plain terms. (2) If this construction was a proper one, the plaintiff had not proved such derangement, and the proof conclusively shows the opposite." The Court held that there was no evidence of mental derangement, but in view of a possible new trial, the Court proceeded to con-

sider the question as to whether failure to give notice by reason of mental incapacity, would excuse the forfeiture. The Court said: "But we are committed to the doctrine in insurance cases, that a provision requiring a notice on pain of forfeiture will not be construed to require strict performance, when by a plain act of God it is made impossible of performance."

The Supreme Court of Nebraska discussed the principle of law involved in the case of *Woodmen's Accident Association v. Byers,* 87 N. W., 546. In that case the plaintiff undertook to recover upon a total disability contract of insurance. The policy stipulated "that as a condition precedent to any liability thereunder, the plaintiff shall give a written notice to the defendant at its home office in Lincoln, Nebraska, of any injury received for which indemnity is claimed, within ten days from date of such injury." The accident occurred on 17 October, and the notice was mailed to the defendant the following November. The Court said: "A company of this character, organized for the purpose of providing indemnity to those suffering injury and loss from accident, should, and, we assume does, have a higher mission than merely the collection of revenues. If the provision quoted must under all circumstances, and regardless of conditions, be absolutely and strictly complied with according to the letter thereof, then the contract can only be regarded as a snare and pitfall sure to entrap the unwary and deprive them of the protection and indemnity contracted for on their part in the best of faith and honesty of purpose. If the contract is legally incapable of any other construction than that contended for, requiring a literal and exact compliance as a condition precedent to be performed in the time mentioned, then if for eleven days the insured is irrational and deranged in his mind as a result of the accident, as he appears to have been, and therefore incapable of complying with this provision, he would be altogether debarred from relief, and the failure would, on legal principles, be as fatal as would be the case if the time were forty-four days, as in the present instance. Such a construction would be shocking to our sense of justice, unconscionable, and unreasonable."

The language employed by the Nebraska Court is perhaps stronger than that contained in any other case, but it tends to show the divergent attitude of the courts upon the question involved.

The *Byers case, supra,* was followed in *Marti v. Midwest Life Insurance Co.,* 189 N. W., 388.

The Supreme Court of South Carolina passed upon the question in *Levan v. Metropolitan Life Insurance Co.,* 136 S. E., p. 304. The trial judge charged the jury "that if at the time the unpaid premium became due Levan was totally and permanently disabled as defined in the policy,

and was incapable of furnishing proofs of his disability by reason of disability itself, and that the beneficiary complied with the policy provisions with reasonable promptness under all circumstances, then the policy would not be considered forfeited for nonpayment of premium." The Court approved the instruction and quoted from the Supreme Court of Georgia as follows: "It is settled by an overwhelming weight of authority that where the failure to give prompt notice is not due to the negligence of the insured or the beneficiary, but such compliance has been prevented and rendered impossible by an act of God, this would furnish a sufficient legal excuse for the delay in giving the stipulated notice; and this doctrine has been applied in cases in which a specified time for the giving of the notice has been fixed by the contract." In support of the conclusion, the Court cited various decisions, including the *Reed* and *Boykin cases.*

The Supreme Court of Kentucky followed the principles of law announced in the foregoing cases in *Metropolitan Life Insurance Co. v. Carroll,* 273 S. W., 54. See, also, *Nelson v. Jefferson Standard Life Insurance Co., post,* 443.

The defendant relies strongly upon the following cases, to wit: *New England Mutual Life Insurance Co. v. Reynolds,* 116 Southern, 151; *International Life Insurance Co. v. Moeller,* 33 Fed. (2d), 386; *New York Life Insurance Co. v. Alexander,* 85 Southern, 93; *Thorensen v. Mass. Benefit Association,* 71 N. W., 668. In the *Thorensen case* no reason or excuse is given for failing to give the notice within the time required. The *Alexander case* was distinguished in *Levan v. Metropolitan Life Insurance Company.* In the *Moeller case* there was no evidence indicating insanity or physical incapacity. The Court said, referring to the testimony of certain witnesses for plaintiff: "They pictured a man who had made a losing fight with tuberculosis. Their story awakens our sympathetic impulses, but it is devoid of facts indicating insanity or physical incapacity on Keller's part in August, 1914."

The *Reynolds case* is directly in point and supports in every respect the conditions and construction of law urged by the defendant. There are other cases which support the defendant's contention, but after a diligent and painstaking investigation of the decisions, we have come to the conclusion that the *Rhyne case* rests upon a solid legal foundation, and that the principles of liability therein declared are in accordance with the weight of authority.

The contract of insurance expressly provided that: "If, after one full annual premium shall have been paid on this policy, and before default in the payment of any subsequent premium, the insured shall furnish to the company due proof that he has been wholly and continuously disabled by bodily injuries or disease, and will be permanently, continu-

ously and wholly prevented thereby from pursuing any occupation whatsoever for remuneration or profit, provided that such total and permanent disability shall occur before the anniversary of the policy on which his age at nearest birthday is 60 years, the company by endorsement in writing on this contract will agree to pay: (a) The premiums which shall become payable after receipt and approval of proof of said disability and during continuance thereof. (b) Monthly income during the lifetime of the insured, . . . of 1 per cent of the face amount of this policy." Manifestly, the policy insured against total disability occasioned by disease. The very disease insured against having produced mental incapacity to give the notice required, the guardian of the plaintiff, under the principles of law announced, was entitled to recover.

The jury found that on 20 February, 1927, the insured was so insane as to be incapable of knowing that he had insurance or that he was required to pay a premium thereon. There was sufficient evidence to be submitted to the jury. The defendant offered strong evidence tending to show that the insured had sufficient mental capacity to give the necessary notice, and the jury would have been justified in so finding, but an issue of fact having been raised by the evidence, the verdict is conclusive of the controversy.

There are other exceptions presented by the record, but none of them warrant a new trial.

No error.