## Cohen v. New York Life Insurance Co.

*Arthur Silverblatt*, for plaintiff.

*Bedford, Jones, McGuigan & Waller*, for defendant.

FINE, J., November 10, 1936.—Defendant has filed an affidavit of defense raising questions of law. Suit was brought by plaintiff to recover disability payments totaling $2,190, with interest on each monthly and annual payment, as the same became payable, on three separate policies of insurance issued by defendant to Joel Cohen. The affidavit squarely raises the question whether there is any liability upon the policies of insurance involved when admittedly notice of disability was not given to defendant company prior to the lapsing of the policies of insurance because of nonpayment of premiums.

Defendant company contends the excuse for the failure to pay the premiums or to submit proof of disability prior to the policies being in default, on the basis the insured was totally and permanently disabled at the time the premiums became due as a result of a mental derangement, was without a duly appointed guardian, and that his family and those beneficially interested in the policies did not have knowledge of the insured's disability nor of the existence of said policies, is unavailing. The insurance company's position is that these facts do not constitute an excuse for the failure to pay the premiums or to furnish proof of the permanent disability of the insured within

the express terms of the policies. One of the policies, no. 6983191, contains this provision:

"(1) Disability benefits shall be effective upon receipt at the company's home office, before default in the payment of premium, of due proof that the insured became totally and permanently disabled after he received this policy and before its anniversary on which the insured's age at nearest birthday is sixty years.

"(3) Waiver of Premiums. The company will waive payment of any premium falling due after approval of such proof of disability and during such disability. Any premium due prior to such approval is payable in accordance with the terms of the policy, but if due after receipt of said proof will, if paid, be refunded upon approval of such proof."

The other two policies, nos. 6598413 and 6812462, contain the following:

"Whenever the company receives due proof, before default in the payment of premium, that the insured, before the anniversary of the policy on which the insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days—the permanent loss of the sight of both eyes, or the severance of both hands or of both feet, or of one entire hand and one entire foot, to be considered a total and permanent disability without prejudice to other causes of disability—then

"(1) Waiver of Premium. Commencing with the anniversary of the policy next succeeding the receipt of such proof, the company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the policy, the company will not deduct the premiums so waived. The loan and surrender values provided for under Section 3 and 4 shall be calcu-

lated on the basis employed in said sections, the same as if the waived premiums had been paid as they became due."

In the determination of questions of law raised under section 20 of the Practice Act of May 14, 1915, P. L. 483, the facts averred in plaintiff's statement of claim must be treated as admitted. Under this rule of law it is admitted that plaintiff, Gussie F. Cohen, guardian of Joel Cohen, was appointed guardian by a decree of the court of this county on October 22, 1934, upon a determination that the said Joel Cohen was mentally defective and unable to take care of his own property; that the three policies of insurance hereinbefore referred to had been issued by defendant company to the said Joel Cohen; that he is under the age of 60 years, having been born on November 27, 1889; that from February 1, 1933, and since that time, he was wholly and permanently disabled by reason of suffering from a disease of the brain known as involution melancholia and confined in an institution for mental diseases; that formal notice and proof of the insured's total and permanent disability was made to defendant company on February 14, 1934, on each of the policies hereinbefore referred to, in accordance with the terms thereof, and that defendant company refused to make payment of the sums payable for permanent disability upon the ground that the policies had lapsed for the nonpayment of premiums due on May 25, 1933, August 17, 1933, and October 23, 1933; that, at a period before and on the dates on which the said policies are alleged to have lapsed, the said insured was totally and permanently disabled, and the payment of the premiums on the said policies would have been waived by defendant company according to the terms of the said policies upon receipt of due notice and proof of total and permanent disability, which said notice and proof were not made by the insured for the reason the insured's mental derangement was such that he did not know or realize he was totally and permanently disabled; that the said policies provided for waiver of premium and disability payments in that event; that during the time

the said policies were allowed to be lapsed the insured had no duly appointed guardian and the insured's mental derangement was such that his family and those beneficially interested in said policies did not know and realize the insured was totally and permanently disabled and did not know of the existence of said insurance policies; that said policies included provisions for total and permanent disability payments and waiver of premiums upon receipt of due notice and proof of disability while the said policies were in force; that notice of the insured's total and permanent disability was made to defendant company on February 14, 1934, or after the insured's family knew and realized the insured was totally and permanently disabled, and that with the exception of the failure to file a formal notice and proof of disability the insured had always, from the issuance of insurance, performed all things to be fulfilled on his part according to the terms of such policies.

The question before the court for determination is whether the existing physical and mental incapacity of the insured at the time the premiums were due and payable upon the respective policies is an excuse for failure to give the notice of such total and permanent disability or nonpayment of the premiums under the circumstances of this case. Counsel for the parties and our own research have failed to disclose any Pennsylvania case in which the facts were identical.

There is a direct conflict of views upon the question herein involved in the many jurisdictions of the United States. Defendant herein argues that insanity is no more an excuse for the failure to give a notice that will cause the payment of premiums to be waived than the failure to make payments of the premiums when waiver is not a duty, either conditional or absolute. For plaintiff, it is argued that, waiver having been promised, though subject to a condition as to notice, there must be a liberal construction of a requirement that is merely modal or procedural, and the insurer will not be deemed, in respect of matters of that order, to have exacted the impossible.

The most recent enunciation or discussion of the question is found in the decision of Mr. Justice Cardozo in Mutual Life Ins. Co. of N. Y. v. Johnson, Admr., 293 U. S. 335. Although in that case the Supreme Court of the United States sustained the ruling of the lower court on the ground that it was compelled to follow the decision of the State courts upon the same question, Mr. Justice Cardozo has quoted the authority and precedents following each of the respective viewpoints. He stated (pp. 338-339) :

"The controversy is one as to which the courts of the country are arrayed in opposing camps. Supporting the petitioner's [defendant herein] view are *New England Mutual Life Ins. Co.* v. *Reynolds,* 217 Ala. 307; 116 So. 151; *Iannarelli* v. *Kansas City Life Ins. Co.,* 114 W. Va. 88; 171 S. E. 748; *Smith* v. *Missouri State Life Ins. Co.,* 134 Kan. 426; 7 P. (2d) 65; *Berry* v. *Lamar Life Ins. Co.,* 165 Miss. 405; 142 So. 445; 145 So. 887; *Western & Southern Life Ins. Co.* v. *Smith,* 41 Ohio App. 197; 180 N. E. 749; *Reynolds* v. *Travelers' Ins. Co.,* 176 Wash, 36; 28 P. (2d) 310; *Dean* v. *Northwestern Mutual Life Ins. Co.,* 175 Ga. 321; 165 S. E. 235; *Hall* v. *Acacia Mutual Life Assn.,* 164 Tenn. 93; 46 S. W. (2d) 56; *Egan* v. *New York Life Ins. Co.,* 67 F. (2d) 899. Cf. *Courson* v. *New York Life Ins. Co.,* 295 Pa. 518; 145 Atl. 530; *Whiteside* v. *North American Accident Ins. Co.,* 200 N. Y. 320; 93 N. E. 948. *Bergholm* v. *Peoria Life Ins. Co.,* 284 U. S. 489, is not apposite, there being no evidence in that case of incapacity, physical or mental, to give the prescribed notice. Supporting the respondent's [plaintiff herein] view are *Swann* v. *Atlantic Life Ins. Co.,* 156 Va. 852; 159 S. E. 192; *Rhyne* v. *Jefferson Standard Life Ins. Co.,* 196 N. C. 717; 147 S. E. 6; 199 N. C. 419; 154 S. E. 749; *Levan* v. *Metropolitan Life Ins. Co.,* 138 S. C. 253; 136 S. E. 304; *Pfeiffer* v. *Missouri State Life Ins. Co.,* 174 Ark. 783; 297 S. W. 847; *Reed* v. *Loyal Protective Assn.,* 154 Mich. 161; 117 N. W. 600; *Marti* v. *Midwest Life Ins. Co.,* 108 Neb. 845; 189 N. W. 388; *Roseberry* v. *American Benevolent*

*Assn.*, 142 Mo. App. 552; 121 S. W. 785; *Metropolitan Life Ins. Co.* v. *Carroll*, 209 Ky. 522; 273 S. W. 54; *Comstock* v. *Fraternal Accident Assn.*, 116 Wis. 382; 93 N. W. 22; *Missouri State Life Ins. Co.* v. *Le Fevre*, 10 S. W. (2d) (Tex. Civ. App.) 267. Cf. *Trippe* v. *Provident Fund Society*, 140 N. Y. 23; 35 N. E. 316; *Insurance Companies* v. *Boykin*, 12 Wall. 433, 436; Restatement of the Law of Contracts, American Law Institute, §301 (4)."

In 54 A. L. R. 611 we find a collection of authorities upon the question of insanity as an excuse for failure to give notice of disability under insurance policies. The authors of this work are of the opinion that the overwhelming weight of authority is to the effect that the insured, in policies requiring notice of disability within a stipulated period after the occurrence thereof, is excused for the failure to give such notice within the stipulated period if he is prevented from so doing by reason of mental incapacity resulting from the disability, provided that such notice is given a reasonable time after recovery: See also 59 A. L. R. 1080.

Although it appears that Pennsylvania has been sometimes classed as following the hard and fast rule requiring notice of total and permanent disability prior to the default in the payment of premiums and the lapsing of the policies of insurance, an analysis of the Pennsylvania decisions discloses that the very question before us, to wit, whether admitted insanity and mental derangement making it impossible to furnish such notice constitutes legal excuse, has never been squarely passed upon in this State. The decision frequently cited as classifying Pennsylvania in the category of States requiring the notice and causing forfeiture of the policy for failure to give such notice is Courson, Executrix, v. New York Life Ins. Co., 295 Pa. 518. However, the Supreme Court, speaking through Mr. Justice Schaffer in that case, at pages 522 and 523, said:

"The company was only to waive the premiums and endorse the waiver on the policy if the policy holder had fur-

nished proof satisfactory to the company of his disability. It was the judge of the proof. The requirement of notice of the disability before the company acted was a salutary one. It enabled the company to investigate before waiving payment of the premiums and guarded it against malingerers and frauds. We are not here concerned with a lapsing of the policy; it was in full force when death came and the insured's beneficiary is now receiving the sums which the policy provides. . . . Here we are not dealing with the lapsing of a policy because the premium was not paid as a result of insanity with a disability clause in effect, but with an endeavor to take back the premiums paid where the insured had not met the requirements of the contract. . . . We are not required to state what our judgment would be under such a state of facts."

In the case at bar the insured is still alive and defendant company has every opportunity of examining him and determining whether or not he was insane on the dates of the maturity of the premiums of the respective policies of insurance. It can even protect itself against any charge or claim of fraud. The decision in Brams v. New York Life Ins. Co., 299 Pa. 11, follows Courson, Executrix, v. New York Life Ins. Co., supra, and is distinguishable from this case. At page 16, Mr. Justice Sadler, in Brams v. New York Life Ins. Co., supra, stated: "The record fails to show that the required information was given at any time prior to the death of the insured."

A. L. I. Restatement of Contracts, §301, states:

"Impossibility that would discharge the duty to perform a promise excuses a condition if . . . (b) existence or occurrence of the condition is no material part of the exchange for the promisor's performance and the discharge of the promisor will operate as a forfeiture."

The restatement gives as an illustration in support of the text of the paragraph the following:

"4. A, an insurance company, insures the life of B for the benefit of B's wife, C. The policy contains a condition

that default in payment of premiums is excusable if notification is sent by the insured before making default. B becomes insane and makes default in paying a premium. Being insane, he gives no previous notification of the non-payment. Within the period of grace allowed by the terms of the policy if he had sent a notification, he dies. A is bound to pay the policy, the condition being excused because of impossibility."

Section 302 states:

"A condition may be excused without other reason if its requirement (a) will involve extreme forfeiture or penalty".

The decision of the Superior Court in Perlman v. New York Life Ins. Co., 105 Pa. Superior Ct. 413, did not involve facts similar to the case at bar. At page 417 the court stated:

"This is not a case where enforcement of the provision as to proof voids the policy or works forfeiture. The policy yet continues as a contract of insurance on plaintiff's life, with provision for benefits in case of total and permanent disability hereafter."

Lucas v. John Hancock Mutual Life Ins. Co., 116 Pa. Superior Ct. 298, follows the decision in Perlman v. New York Life Ins. Co., supra, in which the facts likewise are not similar to the particular situation we have here.

We are of the opinion it is unreasonable to apply the hard and fast rule of strict interpretation of the language of the policies of insurance under the circumstances of this case. It certainly is not possible the parties had in contemplation the doing of things admittedly legally and physically impossible. How can it be expected that a party to a contract of insurance should give notice of his permanent and total disability when it is admitted he was mentally incapacitated and insane at the time the notice was to be given. A liberal interpretation of policies of this character is the sound rule to apply under the admitted facts.

It may fairly be said the parties contemplated a capacity to make the proof when disability should arise, for otherwise such a contract may prove a trap for the unwary by imposing conditions which incapacity may render it impossible to perform. It is true there is no language in the condition which qualifies it in the event its performance should become impossible; but it is a general rule in the law of contracts that impossibility may excuse a condition, though a condition precedent, if the existence or occurrence of the condition is no material part of the exchange for the promisor's performance, and the discharge of the promisor will operate as a forfeiture. In The Germania Fire Ins. Co. et al. v. Boykin, 12 Wall. 433, where failure to perform a provision requiring proof of loss in a fire insurance policy was held to be excused by the insanity of the insured, the United States Supreme Court said (p. 443):

". . . if he was so insane as to be incapable of making an intelligent statement [of the time, nature, and amount of the loss] this would, of itself, excuse that condition of the policy."

Our own Supreme Court, in Janney v. Scranton Life Ins. Co., 315 Pa. 200, 203, said:

"While it is of course true that where the language of an insurance policy is clear and unambiguous it cannot be construed to mean otherwise than what it says (Urian v. Insurance Co., 310 Pa. 144, 150-51) yet it must be given a reasonable interpretation, in the light of the subject-matter and the situation of the parties at the time the contract was made, and such construction must not be manifestly absurd, nor effectually prevent a recovery under all circumstances. So, too, 'in cases of doubt or ambiguity, the provisions of a life insurance policy [and of all other insurance policies] will be viewed in the light most favorable to the insured' ".

The decision in Lyford v. New England Mutual Life Insurance Company of Boston, 122 Pa. Superior Ct. 16,

decided April 24, 1936, does no violence to the conclusion reached herein. That case falls in that category of decisions led by Perlman v. New York Life Ins. Co., supra.

In the case at bar it is contended the policies have lapsed, and it must be admitted for the purpose of disposing of this question that the assured was insane and legally incapable of giving the required notice. That the question before us is still an open one in Pennsylvania and not controlled by Lyford v. New England Mutual Life Insurance Company of Boston, supra, is disclosed by the language of President Judge Keller in that case, as follows (pp. 25, 26, 29) :

"In most of the cases relied on by appellant the policy had lapsed or been forfeited because of the failure of the insured to pay the premiums, and after the death of the insured recovery was allowed because the insured had been prevented by insanity or other mental ailment, or by absolute physical incapacity, from giving the company notice of his total and permanent disability, which would have entitled him to a waiver of premium payments, and thus kept the policy in force until his death, none of which circumstances are present in this case. . . . The present case is not complicated by any circumstances such as would excuse, on the ground of necessity, the giving of due proof of total and permanent disability. The premiums were paid, the policies did not lapse, the insured is alive, and his failure to give notice of his total and permanent disability until March 21, 1934 was not due to any physical or mental weakness which could be pleaded as an excuse. . . . although, as here, the failure to present proof of disability sooner was not due to the insured's insanity or other cause *preventing* his acting, but because of his *failure* to act, from ignorance, negligence or other cause within his own control."

Summary judgment should not be entered in doubtful cases, and particularly where a proper judicial determination of a controversy will be facilitated by an oppor-

tunity for a broader inquiry into the facts than is presented by the bare pleadings: Peabody v. Carr, 316 Pa. 413; Ridley Park Borough v. American Surety Co. of N. Y., 317 Pa. 263; Drummond v. Parrish et al., 320 Pa. 307.

We are of the opinion there should be submitted to the jury the question whether the insured was so mentally or physically incapacitated at the time of the maturity of the premiums of the insurance policies as to make it impossible for him to make the required proof thereof, whereby failure to furnish proof of permanent and total disability was excusable and defeats default. This, to us, is the equitable, fair and reasonable rule. One cannot be compelled to do the legally impossible. We overrule the contentions of defendant.

Accordingly, the questions of law raised in the affidavit of defense are decided against defendant, with leave to file a supplemental affidavit of defense to the averments of fact in the statement of claim within 15 days from the date of notice of this decision.